UNITED STATES of America,
Plaintiff-Appellee,

v.

Alberto MONTES–CARDENAS, a/k/a
Tony Campos, Defendant-Appellant.

No. 83–5491.

United States Court of Appeals,
Eleventh Circuit.

Nov. 15, 1984.

Raymond J. Takiff, Coconut Grove, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Robert Dunlap, Linda Collins-Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and HANCOCK *, District Judge.

KRAVITCH, Circuit Judge:

Alberto Montes-Cardenas was convicted of conspiracy to possess with intent to distribute cocaine, 21 U.S.C. § 846, possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), and possession of unregistered silencers, 26 U.S.C. § 5861(d).[1] On appeal, he challenges the sufficiency of the evidence to support the convictions, the failure of the court to sever the counts for separate trials, and several other rulings made during the trial. Concluding that the jury had sufficient evidence to convict Montes-Cardenas on all three counts and that the district court's rulings were correct, we affirm.

## I. BACKGROUND

The incidents culminating in the convictions began in March, 1982, when Montes-Cardenas purchased a car from Carlos Munoz, a South Florida car salesman. Subsequently, Montes-Cardenas introduced Munoz to Diego Urrego, who also purchased a car. Over the next several months, Munoz sold twelve automobiles to individuals introduced to him by Urrego and Montes-Cardenas. In June, 1982, Montes-Cardenas told Munoz that he and Urrego imported cocaine, that they had a large amount for sale, and that Munoz could have as much cocaine as he wanted if he could find buyers. Munoz, however, never purchased any cocaine. Subsequently, Montes-Cardenas asked Munoz to help him locate towmotors, which were to be sent to Venezuela to Salvador Churon-Gomez,[2] and used to smuggle cocaine into the United States.

Montes-Cardenas then travelled to Venezuela, from where he telephoned Munoz and told him Churon-Gomez was in the United States and needed assistance to get settled. In July, 1982, Munoz helped Churon-Gomez rent a house in Miami, and located furniture for him. Munoz also drove Churon-Gomez to a shop to purchase a scale. When the shop owner refused to

---

* Honorable James H. Hancock, U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. Montes-Cardenas and two others, Diego Urrego and Salvador Churon-Gomez, were charged under 21 U.S.C. § 846 (1982), with conspiracy to violate 21 U.S.C. § 841(a)(1) (proscribing possession of a controlled substance, which includes cocaine, with the intent to distribute) (Count One), and a substantive violation of 21 U.S.C. § 841(a)(1) (Count Two). Montes-Cardenas and Churon-Gomez were charged under 26 U.S.C. § 5861(d) (1982) (proscribing possession of a firearm not registered in the National Fire-

arms and Transfer Record) (Count Three). Counts Two and Three also contained charges under 18 U.S.C. § 2 (1982) (aiding and abetting). Frank Montes, another individual involved in the group, was not charged in the indictment. Neither Urrego nor Churon-Gomez was tried with appellant.

2. Carlos Munoz testified that Churon-Gomez was Montes-Cardenas' brother-in-law. In his statement to the police following his arrest, Montes-Cardenas referred to Churon-Gomez as his friend.

accept an out-of-town check, Churon-Gomez telephoned Frank Montes, appellant's brother, and asked him to write a check as payment. The shop owner delivered the scale to Munoz's place of employment, where Frank Montes paid for it. After Churon-Gomez departed with the scale, Frank Montes remained and produced a bag filled with cocaine that he said belonged to Montes-Cardenas and Urrego. Munoz became very angry at this display, and he refused Frank Montes' offer to sell cocaine. Munoz contacted Churon-Gomez about the incident; Churon-Gomez told him that "Alberto would take care of Frank," and also offered to supply Munoz with cocaine.

When Montes-Cardenas returned from Venezuela in August, 1982, he met with Munoz twice to discuss whether Munoz could find cocaine buyers. Diego Urrego attended one of these meetings. At the other meeting, Montes-Cardenas and Munoz discussed Frank's conduct, and Montes-Cardenas corroborated that he had "taken care of Frank." Although Munoz said he would think about the offer to purchase cocaine, he subsequently left his place of employment, and apparently was never contacted about the offer again.

On October 19, 1982, police searched the house rented by Churon-Gomez. In the nearly empty building, police found a handgun to which a silencer was attached, two briefcases, the scale purchased by Churon-Gomez, and sixty-eight pounds of cocaine.[3] One of the briefcases was locked, but police used a knife to cut it open and found three silencers and another gun, several documents in the names of Montes-Cardenas and Tony Campos, an alias used by Montes-Cardenas, and photographs of Montes-Cardenas and Churon-Gomez.[4] Inside the other briefcase were documents in the names of Tony Campos and Churon-Gomez, and pictures of Montes-Cardenas and his family.[5]

On March 13, 1983, federal agents arrested Montes-Cardenas for possession of unregistered silencers. Montes-Cardenas admitted that the locked briefcase found at Churon-Gomez's home was his, and explained that he used the name Tony Campos because of some personal problems in Venezuela.

Montes-Cardenas was indicted for cocaine violations as well as possession of the silencers. Prior to trial, he moved to sever the drug counts from the firearms count for separate trials. The district court denied this motion. Montes-Cardenas also sought a continuance when, on the date of trial, he first learned that Carlos Munoz would testify for the government. The district court denied the motion, but halfway through the trial and before Munoz testified, the court granted a three-day recess.

On appeal Montes-Cardenas raises five issues: (1) the trial court's refusal to sever the drug charges from the firearms violation; (2) the sufficiency of the evidence on all three counts; (3) the admission of certain hearsay statements; (4) the trial court's refusal to grant a continuance upon appellant's original motion; and (5) the admission of evidence of other crimes attributable to appellant.

## II. DEFENDANT'S MOTION TO SEVER COUNTS FOR TRIAL

■ Montes-Cardenas contends that the district judge improperly denied his motion

---

**3.** The handgun with the silencer was found in a closet located in the master bedroom. In another bedroom on the other side of the house, police found the briefcase that contained the other three silencers. The cocaine was discovered in various parts of the house; some was hidden in the attic, and police used an access door located on the ceiling of the master bedroom closet to enter the attic. On the scale, which was found in a third bedroom, police detected some cocaine residue.

**4.** The documents included receipts from bank transactions made by Alberto Montes and Tony Campos, utility bills in the name of Alberto Montes, and some blank Venezuelan passports.

**5.** These documents included Churon-Gomez's Venezuelan driver's license and Colombian passport, several hotel receipts and bank receipts in Churon-Gomez's name, and the receipt from an airline ticket issued to Tony Campos.

to sever for separate trials Counts One and Two (drug counts) from Count Three (firearms violation). We undertake a two-step inquiry to determine whether the charges were properly tried at the same time. First, the government must demonstrate that the initial joinder of the offenses was proper under Rule 8 of the Federal Rules of Criminal Procedure.[6] Second, we must determine whether the trial court abused its discretion by refusing to order a severance under Rule 14.[7] *United States v. Forrest,* 623 F.2d 1107, 1114 (5th Cir.1980), *cert. denied,* 449 U.S. 924, 101 S.Ct. 327, 66 L.Ed.2d 153 (1980).[8]

Improper joinder under Rule 8 presents a question of law subject to plenary review by this court. *United States v. Park,* 531 F.2d 754, 760 (5th Cir.1976). In addressing this issue, however, we must construe Rule 8 broadly in favor of the initial joinder. *United States v. Scott,* 659 F.2d 585, 589 (5th Cir.1981) (Unit B), *cert. denied,* 459 U.S. 854, 103 S.Ct. 121, 74 L.Ed.2d 105 (1982);[9] *Tillman v. United States,* 406 F.2d 930, 934 (5th Cir.), *vacated on other grounds,* 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969).

Offenses may be joined if they are based on "two or more acts or transactions connected together or constituting part of a common scheme or plan." Fed.R. Crim.P. 8(a). Two crimes are "connected" together if the proof of one crime constitutes a substantial portion of the proof of the other. *See, e.g., United States v. Sweig,* 441 F.2d 114, 118–19 (2d Cir.), *cert. denied,* 403 U.S. 932, 91 S.Ct. 2256, 29 L.Ed.2d 711 (1971); *United States v. Weber,* 437 F.2d 327, 331 (3d Cir.1970), *cert. denied,* 402 U.S. 932, 91 S.Ct. 1524, 28 L.Ed.2d 867 (1971); *see also United States v. Halper,* 590 F.2d 422, 429 (2d Cir.1978) (joinder improper when commission of one crime did not lead to the commission of the other and proof of one did not constitute proof of the other). Joint trials in these circumstances obviate the need for the government to make duplicate offers of proof, and allow the accused to avoid the inconvenience of two separate trials. *United States v. Halper,* 590 F.2d 422, 430; *United States v. McGrath,* 558 F.2d 1102, 1106 (2d Cir.1977), *cert. denied,* 434 U.S. 1064, 98 S.Ct. 1239, 55 L.Ed.2d 765 (1978). Here, police discovered the silencers during the same search that produced the drugs, and the presence of defendant's briefcase, which contained three of the silencers, was a significant link in the government's proof for the drug charges and the weapons charge.

An additional factor present here, however, that leads us to conclude that the offenses charged in this case were connected together is the nexus between weapons and drugs, which courts have acknowledged in the context of permitting the government to introduce weapons into evidence at drug trials. In *United States v.*

**6.** Rule 8(a) of the Federal Rules of Criminal Procedure provides:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

**7.** Rule 14 of the Federal Rules of Criminal Procedure provides:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials

of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

**8.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**9.** This circuit has adopted as precedent all decisions of Unit B of the former Fifth Circuit. *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982).

*Lippner,* 676 F.2d 456 (11th Cir.1982), this court held that weapons found on a defendant's person or property were admissible into evidence in a trial for a drug conspiracy. *Id.* at 463. The court reasoned that a gun and brass knuckles were "tools for the execution of the crime" of drug trafficking, and were probative of the defendant's intent and his knowledge that he was engaged in an illicit transaction. *Id.* Similarly, in *United States v. Perez,* 648 F.2d 219 (5th Cir.), *cert. denied,* 454 U.S. 1055, 102 S.Ct. 602, 70 L.Ed.2d 592 (1981), the court upheld the introduction into evidence of loaded guns discovered in a house into which the defendants were unloading marijuana at the time of their arrest. 648 F.2d at 224. The *Perez* court endorsed the following observation:

> Experience on the trial and appellate benches has taught that substantial dealers in narcotics keep firearms on their premises as tools of the trade almost to the same extent as they keep scales, glassine bags, cutting equipment, and other narcotic equipment.

648 F.2d at 224 (quoting *United States v. Wiener,* 534 F.2d 15, 18 (2d Cir.1976). Several other courts also have recognized that weapons have become "tools of the trade" for those involved in the distribution or manufacture of illicit drugs, in holding that weapons were properly admitted into evidence at drug trials. *See United States v. Romero,* 692 F.2d 699, 705 (10th Cir.1982); *United States v. Marino,* 658 F.2d 1120, 1123 (6th Cir.1981); *United States v. Picklesimer,* 585 F.2d 1199, 1204 (3d Cir.1978); *United States v. Pentado,* 463 F.2d 355, 361 (5th Cir.1972), *cert. denied,* 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 271 (1973); *United States v. Cannon,* 472 F.2d 144, 145 (9th Cir.1972); *see also United States v. Arnott,* 704 F.2d 322, 326 (6th Cir.1983) (weapons found in coconspirator's home properly admitted into evidence at defend-

ant's drug trial when defendant had frequently visited coconspirator's home in which drugs were stored).

The same logic used to admit weapons into evidence at drug trials directs us to conclude that, especially when, as here, weapons and drugs are found during the same search, joinder of a weapons offense with drug charges is proper under Rule 8(a).[10] Indeed, several courts have upheld joinder of drug charges with weapons violations under Rule 8 when the weapons were found during the same search that produced the drugs. In *United States v. Park, supra,* the court upheld the initial joinder of a charge of manufacturing illegal drugs and a charge of unlawful receipt of a firearm, when police found the gun and the drugs while they searched defendant's home. 531 F.2d at 761. The Tenth Circuit recently held that the joinder of drug charges with a weapons violation was proper under Rule 8 when the guns were found near the drugs. *United States v. Valentine,* 706 F.2d 282, 289 (1983). We hold that the offenses were properly joined in the same indictment in this case under Rule 8.[11]

█ The question remains, however, whether under Rule 14 the district court should have severed the counts. Our review of this issue is limited to whether the trial court abused its discretion in denying the motion to sever. *United States v. O'Malley,* 707 F.2d 1240, 1250 (11th Cir. 1983). To demonstrate an abuse of discretion, the defendant must show clear prejudice suffered by having to defend against the charges simultaneously. *United States v. Benz,* 740 F.2d 903, 911 (11th Cir.1984).

█ Appellant asserts that he was prejudiced by the court's refusal to sever because he may have elected to testify against either of the charges, but that the government denied him this opportunity by

---

**10.** We do not suggest that joinder of offenses should be automatic simply because evidence of the crimes would be admissible at separate trials. Rather, we focus on the connection between drugs and weapons, which has been established in the evidentiary context.

**11.** We express no opinion whether joinder of weapons and drug offenses would be proper if the charges arise in a different factual context.

requiring him to defend against both at the same trial. A defendant who presents such a claim must demonstrate that he or she has important testimony to give on one count and strong need to refrain from testifying on the other. *United States v. Outler*, 659 F.2d 1306, 1313 (5th Cir.1981) (Unit B), *cert. denied*, 455 U.S. 950, 102 S.Ct. 1453, 71 L.Ed.2d 665 (1982); *United States v. Forrest*, 623 F.2d 1107, 1115 (5th Cir. 1980). Montes-Cardenas contends only that he may have testified at one or the other trial. He does not explain what testimony he would have proffered with respect to either charge, nor does he show why the joint trial prevented him from taking the stand. Appellant's bare allegations gave the trial judge no factual basis on which to evaluate any prejudice. Under the circumstances, the trial court did not abuse its discretion under Rule 14 by refusing to sever the counts for trial.

## III. SUFFICIENCY OF THE EVIDENCE

In reviewing the sufficiency of the evidence to support the convictions, we must examine the evidence in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), and affirm the conviction if "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982) (Unit B en banc), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). The evidence may be sufficient though it does not "exclude every reasonable hypothesis of innocence or [is not] wholly inconsistent with every conclusion except that of guilt .... A jury is free to choose among reasonable constructions of the evidence." *Id.* We conclude that the evidence presented at trial was sufficient to convict Montes-Cardenas on all three counts of the indictment.

The prerequisites to a finding of guilt on a drug conspiracy count are proof that two or more persons agreed to commit a drug-related offense, that the defendant knew of the conspiracy, and that he agreed to become a member. *United States v. Marszalkowski*, 669 F.2d 655, 661 (11th Cir.), *cert. denied*, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 167 (1982). The existence of the conspiracy may be established through direct or circumstantial evidence. *United States v. Blasco*, 702 F.2d 1315 (11th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 275, 78 L.Ed.2d 256 (1983). The evidence here showed that Montes-Cardenas told Munoz on several occasions that he had large amounts of cocaine for sale, that he and Urrego were partners in the drug business and that he was involved in importing cocaine with Churon-Gomez. Montes-Cardenas also asked Munoz to help Churon-Gomez get settled, and it was at the house rented by Churon-Gomez that police found the cocaine and Montes-Cardenas' briefcase filled with his personal papers. From this, a jury could reasonably infer Montes-Cardenas' knowledge and participation in a conspiracy to possess with intent to distribute cocaine.[12]

To sustain a conviction of the substantive offense of possession, the government must prove knowing possession of a controlled substance with intent to distribute it. *United States v. Figueroa*, 720 F.2d 1239, 1244 (11th Cir.1983). Possession may be actual or constructive, and the latter can be established by evidence showing ownership, dominion, or control over the contraband itself or the premises on which it is concealed. *United States v. Davis*, 679 F.2d 845, 853 (11th Cir.1982), *cert. denied*, 459 U.S. 1207, 103 S.Ct. 1198, 75 L.Ed.2d 441 (1983). Constructive possession may be shared with others, and can be established by circumstantial or direct evidence. *United States v. Ramos*, 666 F.2d 469, 476 (11th Cir.1982). Intent to distribute may be inferred from

---

**12.** Appellant asserts that while he was in California, his house was broken into and his personal papers were scattered about. Upon learning of the break-in, appellant says he asked

Churon-Gomez to gather the papers, place them in the briefcase, and take them until appellant returned. This explanation was offered to the jury, and the jury was free to accept or reject it.

the quantity of cocaine seized. *United States v. Thomas,* 676 F.2d 531, 535 (11th Cir.1982).

 Here, there was sufficient evidence linking appellant with the cocaine found at the house rented by Churon-Gomez to constitute constructive possession. On several occasions, appellant tried to persuade Munoz to seek buyers for cocaine. Police found appellant's briefcase containing personal documents at Churon-Gomez's home during the same search that produced the cocaine. It was appellant who asked Munoz to assist Churon-Gomez in finding a place to live in the United States, and appellant admitted to Munoz that he was involved in a cocaine importation scheme with Churon-Gomez. Finally, police seized sixty-eight pounds of cocaine from the house, and this quantity evidences a clear intent to distribute the drug.

 To sustain the conviction of possession of the unregistered silencers, the government must prove that the defendant knowingly possessed the silencers, and that they were not registered to the defendant in the National Firearms Register and Transfer Record. *United States v. Gonzalez,* 719 F.2d 1516, 1522 (11th Cir. 1983), *cert. denied,* — U.S. ——, 104 S.Ct. 1312, 79 L.Ed.2d 710 (1984). Possession itself is sufficient, and the government need not prove that the defendant knew that registration was required. *Id.* Possession may be actual or constructive and can be proven by circumstantial evidence. *United States v. Smith,* 591 F.2d 1105, 1107 (5th Cir.1979).

 A jury could reasonably infer that Montes-Cardenas constructively possessed the unregistered silencers. The government showed that there were no silencers registered in the names of Montes-Cardenas or the other coconspirators. When police told him he was being arrested for possession of silencers, Montes-Cardenas exclaimed, "Oh, you mean the silencers that were found in my briefcase. Well I can explain that." He offered this statement without being told that police found

the silencers in his briefcase. The briefcase was locked when police discovered it, and it contained Montes-Cardenas' identification and his personal documents. Although the briefcase was found at the house rented by Churon-Gomez, Montes-Cardenas had asked Munoz to help Churon-Gomez "get settled." We hold that there was sufficient evidence to connect Montes-Cardenas to the silencers and to convict him on this count.

## IV. ADMISSIBILITY OF COCONSPIRATOR'S STATEMENTS

 Montes-Cardenas claims that the district court erred in permitting Munoz to testify to statements made by his brother, Frank Montes, who was not named in the indictment. Under the Federal Rules of Evidence, a statement is not hearsay if it is offered against a party and is "a statement by a co-conspirator of a party during the conspiracy and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E). In *United States v. James,* 590 F.2d 575 (5th Cir.), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), the former Fifth Circuit held that to admit a statement by a coconspirator against a criminal defendant,

> the court must determine as a factual matter whether the prosecution has shown by a preponderance of the evidence independent of the statement itself (1) that a conspiracy existed, (2) that the coconspirator and the defendant against whom the coconspirator's statement is offered were members of the conspiracy, and (3) that the statement was made during the course and in furtherance of the conspiracy.

590 F.2d at 582. Statements made by an unindicted coconspirator are admissible so long as the government makes the proper showing. *United States v. Goodman,* 605 F.2d 870, 878–79 (5th Cir.1979); *United States v. D'Angelo,* 598 F.2d 1002, 1003 (5th Cir.1979).

 In the instant case, there was sufficient independent evidence that Frank Montes was a member of the same conspir-

acy as the defendant. Frank Montes paid for the scale that was discovered by police at the home rented by Churon-Gomez. After Frank Montes showed the bag of cocaine to Munoz at the car dealership, Montes-Cardenas told Munoz that he had "taken care of Frank." The record shows that the statements were made during the course of the conspiracy. In addition, Frank's acts were in furtherance of the conspiracy to distribute the cocaine. *See United States v. Goodman*, 605 F.2d at 878 (conspirators' attempts to solicit membership in conspiracy are acts in furtherance of the conspiracy). We hold, therefore, that Munoz's testimony relating Frank Montes' statements was properly admissible.

## V. EVIDENCE OF OTHER CRIMES

■ Montes-Cardenas asserts that the trial court improperly permitted Munoz to testify that Montes-Cardenas was also involved in importing cocaine, an offense with which he was not charged.[13] He contends that the evidence was admitted to establish his propensity for criminal activity, in violation of Rule 404(b) of the Federal Rules of Evidence.

In *United States v. Weeks*, 716 F.2d 830 (11th Cir.1983), the Eleventh Circuit held that evidence of criminal activity other than the charged offense is not extrinsic for purposes of Rule 404(b) if

> it is an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, if it was inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime at trial.

*Id.* at 832 (citations omitted). Here, the challenged evidence described a crime, importing cocaine, that arose out of the same series of transactions as the charged offenses, the conspiracy to distribute the drug. *See United States v. Kloock*, 652 F.2d 492, 494–95 (5th Cir.1981) (Unit B); *cf. United States v. Killian*, 639 F.2d 206, 211 (5th Cir.1981) (weapons and drugs retrieved from conspirators' homes following arrest were admissible in trial for sale of cocaine because it was necessary to help prove defendant's involvement in the conspiracy), *cert. denied*, 451 U.S. 1021, 101 S.Ct. 3014, 69 L.Ed.2d 394 (1982). Because the evidence is not extrinsic, appellant's contention is without merit.

■ Alternatively, even if the evidence is extrinsic, it can still be admitted if it is relevant to an issue other than the defendant's character, Fed.R.Evid. 404(b), and the probative value is not substantially outweighed by its tendency to create unfair prejudice, Fed.R.Evid. 403. *See United States v. Beechum*, 582 F.2d 898, 911 (5th Cir.1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). The evidence, testimony that Montes-Cardenas imported cocaine, involves a crime similar to the ones charged, and it is therefore relevant to the issue of intent in this case. Both acts involved the intent to traffic in cocaine. *See United States v. Barnes*, 586 F.2d 1052, 1057 (5th Cir.1978). Statements relating to importation of cocaine, when made to a prospective customer, also evidence an intent to distribute it in this country. In addition, defendant's involvement in importing the cocaine was certainly close in time to the offenses charged here.

Furthermore, the probative value of the evidence is not substantially outweighed by its prejudicial effect. The *Beechum* court identified three reasons why such evidence

---

**13.** The evidence was elicited during the following colloquy:

> QUESTION: What did Mr. Alberto Montes-Cardenas tell you about the drug business?
> ANSWER: Mr. Diego Urrego and he were partners—
> COURT: You say they were partners?
> ANSWER: They were partners in the business.

> QUESTION: And what was the nature of their business?
> ANSWER: The business was drugs, cocaine business. They had about six or seven kilos available at $43,000 a kilo. And part of his business enterprise was the smuggling of cocaine itself.

may be unfairly prejudicial: if it is likely to confuse the issues, mislead the jury, or cause undue delay. 582 F.2d at 914. Here the proffered testimony was probative of the conspiracy and possession charges, and did not contain any of the indicia of prejudice. We thus conclude that the district court did not abuse its discretion in admitting the evidence.

## VI. DEFENDANT'S MOTION FOR CONTINUANCE

■ Finally, appellant argues that the trial court erred by denying his motion for a continuance when the government failed to comply with a pre-trial discovery order requiring disclosure of promises of immunity made to any prospective witnesses.

The government waited until the day of trial to reveal information about a grant of immunity and a prior conviction relating to Carlos Munoz, despite the pre-trial discovery order issued six weeks earlier. Appellant immediately asked for a continuance, and the trial court denied this request. Appellant claims that the trial court abused its discretion in refusing to grant the continuance.[14] Under the principles announced in *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), due process requires the government to disclose both to the defense and to the jury any promises of immunity or leniency offered to witnesses in return for testimony. *Williams v. Brown*, 609 F.2d 216, 221 (5th Cir.1980). The rationale for requiring government disclosure of this evidence is to permit the jury to evaluate a witness' credibility in assessing the weight to give testimony. *Giglio*, 79 S.Ct. at 766. The *Giglio* Court did not intimate when the govern-

ment was required to turn over this information, but in *Williams v. Dutton*, 400 F.2d 797 (5th Cir.1968), *cert. denied*, 393 U.S. 1105, 89 S.Ct. 908, 21 L.Ed.2d 799 (1969), the Fifth Circuit observed that the government had a duty to provide evidence favorable to a criminal defendant "at the appropriate time." 400 F.2d at 800.

Here, although the government did not comply with the discovery order until the day of trial, appellant obtained the information relating to Munoz before Munoz testified, and evidence of the government's grant of immunity and Munoz's prior criminal record was elicited on direct examination and thoroughly probed on cross-examination. Because the government made the agreement known to the defense prior to trial, in sufficient time for the jury to become aware of it, we conclude that the purpose of the *Giglio* doctrine was accomplished and that the trial court did not abuse its discretion in denying the motion for a continuance. *United States v. Poitier*, 623 F.2d 1017, 1023–24 (5th Cir.1980); *Hudson v. Blackburn*, 601 F.2d 785, 789 (5th Cir.1979), *cert. denied*, 444 U.S. 1086, 100 S.Ct. 1046, 62 L.Ed.2d 772 (1980); *United States v. McGovern*, 499 F.2d 1140, 1143 (1st Cir.1974). Moreover, the court later granted a three-day recess before Munoz testified so that appellant could investigate Munoz's history of mental health. Even assuming the trial court erred in refusing appellant's initial request for a continuance, any harm caused thereby was remedied.[15]

## VII. CONCLUSION

For the foregoing reasons, we conclude that appellant's claims all are without merit. The convictions are therefore AFFIRMED.

14. Before trial, the government filed a sealed motion in the court below stating that it would not comply with the pre-trial discovery order to ensure the safety of its witness, Carlos Munoz.

15. In the court below, appellant also requested the continuance to investigate Munoz's background for impeachment material. On the second day of trial the court granted a recess to permit an inquiry into Munoz's psychiatric his-

tory. Munoz had unsuccessfully raised an insanity defense to criminal charges brought in 1981, and received psychiatric treatment to enable him to reduce his dependency on cocaine. Appellant does not now claim that the recess ultimately granted was insufficient to permit effective investigation of Munoz's capacity, thus we do not consider the issue.