UNITED STATES of America,
Plaintiff–Appellee,

v.

Pedro Pablo GUERRERO,
Defendant–Appellant.

No. 88–6083.

United States Court of Appeals,
Eleventh Circuit.

July 5, 1991.

Douglas L. Williams, Miami, Fla., for defendant-appellant.

Nina Stillman Mandel, Dawn Bowan, and Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before CLARK and DUBINA, Circuit Judges, and HENDERSON, Senior Circuit Judge.

DUBINA, Circuit Judge:

Appellant, Pedro Pablo Guerrero ("Guerrero"), appeals his convictions for violations of 21 U.S.C. § 846 (conspiracy to possess and intent to distribute at least fifty grams of cocaine base), and 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (possession of and intent to distribute at least fifty grams of cocaine base). For the reasons which follow, we affirm Guerrero's convictions.

## I. BACKGROUND

In January 1988, Guerrero and co-defendant, Farles Salgero ("Salgero"), rented a warehouse in the Miami, Florida area in the name of "Harold & Robert, Inc." On one or two occasions over the next several months both Guerrero and Salgero delivered the rent to the manager of the warehouse property. Later that spring, Salgero hired Robert Torra ("Torra"), a licensed customs house broker, to clear through Customs a shipment of brown sugar and guava paste which Salgero and his father-in-law, Jose Garces ("Garces"), were expecting. Salgero told Torra that his name was Guerrero, but Torra later learned that his name was Salgero. At trial, Torra identified Guerrero as having accompanied Salgero to Torra's office about forty percent of the time. During one of the visits by Guerrero, Torra explained to him that when the merchandise was cleared through customs and taken to the warehouse, the Food and Drug Administration ("FDA") had to be notified so it could inspect the food products in the shipment.

On March 30, 1988, U.S. Customs Inspector Michael Holloway ("Holloway") learned of the arrival from Bogota, Columbia, of an airline carrying a shipment of 550 boxes of brown sugar and guava paste. Holloway decided to examine the shipment because such commodities usually are not imported into the United States through the airport. When Holloway cracked open some of the blocks of sugar he detected the strong odor of acetone, which he recognized from previous seizures of cocaine. Based on the odor and the color differentiation within the blocks of sugar, Holloway conducted a field test for cocaine on the substance and it tested positive. Drug Enforcement Administration ("DEA") agents then took the shipment to a secure DEA warehouse.

Torra learned that the shipment had arrived and informed Salgero that Customs had placed a hold on it. DEA Agent Shepherd ("Shepherd") learned that Torra was

attempting to have the shipment cleared so he contacted Torra and told him that the shipment contained cocaine base, but Torra should proceed to process the shipment as usual and advise Shepherd if the consignee contacted him. Torra prepared the requisite paperwork for Customs and the FDA. The shipment was then cleared by Customs' main office. Torra informed Salgero and Guerrero that they owed $5220.00 to the airline and Salgero subsequently brought Torra a copy of the airwaybill marked "paid" by the airline.

On May 6, 1988, Guerrero went to the management office of the warehouse and asked the manager for a duplicate key to the warehouse which he and Salgero had rented because Guerrero could not locate Salgero. The manager did not have a duplicate key so she contacted a locksmith to change the lock. Guerrero picked up the new keys the next day, reimbursed the manager for the cost of the new lock and paid for that month's rent.

On May 10, Shepherd was in Torra's office waiting to meet with Torra when he finished his discussions with two men whom Torra later identified as Salgero and Guerrero. Torra gave Shepherd the money which Salgero and Guerrero gave him for the storage, delivery and brokerage charges. Torra also told Shepherd the shipment would be delivered to a warehouse at 8665 N.W. 66th Street. This was the first time Shepherd learned of this address. Shepherd then brought a telephone-adaptable tape recorder to Torra's office and monitored a call to Torra from a man who said his name was "Carlos." Torra and "Carlos" arranged for the delivery of the shipment of brown sugar and guava paste for the next day, May 11. As Shepherd had instructed him, Torra recommended to "Carlos" that he use the DEA's undercover trucking company to deliver the cargo.

The next morning, Customs Special Agent Benavente and DEA Special Agent Averi, acting in an undercover capacity, drove a truck containing the shipment to the warehouse at 8665 N.W. 66th Street. Other than the number of the address, the warehouse bore no identifying markings on the outside, such as a name for a company. When Salgero and Guerrero arrived, they entered the warehouse which Agent Benavente observed to be sparsely furnished. In the bay area, Agent Benavente saw a few boxes containing some personal items, an apparently inoperative copying machine, and a desk. There was no warehouse equipment available to unload the shipment so Salgero borrowed a forklift from the next warehouse. Upon Salgero's instructions, Guerrero left the warehouse to obtain some rope to facilitate the unloading process. Guerrero assisted in unloading one pallet which was about to fall and then he observed as the unloading continued. When the unloading was completed, Salgero signed the name "Carlos Moreno" on the airwaybill and the delivery receipt which the agents provided. Later that day, Guerrero informed Torra that the shipment had been unloaded and was ready to be inspected by the FDA. Also that same day, Salgero returned to the warehouse, drove his car inside and locked himself in the warehouse, where he remained for two days.

The next day, Guerrero rode past the warehouse a couple of times in what the agents described as a countersurveillance manner. Finally, Guerrero approached the warehouse and went to the mail slot where he removed what appeared to be a slip of paper. The following day, Guerrero again drove slowly past the warehouse a couple of times. Around noon, Guerrero approached the warehouse and knocked on the door, but received no response. He looked through the mail slot and appeared to be talking to someone inside. About ten minutes later, a locksmith arrived and opened the door for Guerrero. Salgero emerged from the inside, talked with Guerrero and then left in his car. Guerrero told the locksmith to make the bill out to "Carlos Sierra," paid the locksmith $84.80 in cash, and then left.

When Salgero left he was followed by four agents who later stopped and arrested him. Salgero consented to a search of his car whereupon the agents discovered a brown bag in the trunk which contained

blocks of brown sugar and ceramics containing the cocaine. At Agent Benavente's direction, Salgero made a controlled, tape-recorded telephone call to Guerrero. Salgero told Guerrero to meet him at a gas station on 58th Street and 79th Avenue. When Guerrero arrived, he was arrested. At the time of his arrest, Guerrero possessed the keys to the van, to his car and to the warehouse. Agent Shepherd obtained a search warrant for the warehouse and used the keys he found on Guerrero's person to open the door. In the warehouse, the agents found the shipment of brown sugar and guava paste. All of the boxes of brown sugar which contained cocaine base were analyzed by the DEA lab and were found to contain a total of 53.09 kilograms of 73% pure cocaine base. The guava paste did not contain any cocaine base.

On May 26, 1988, a federal grand jury returned a two count indictment against Guerrero and Salgero which charged both men with conspiracy to possess and possession of at least fifty grams of a mixture and substance containing a detectable amount of cocaine base with the intent to distribute. Salgero pled guilty. Guerrero pled not guilty and proceeded to trial, where a jury found him guilty of both counts. Guerrero was sentenced to concurrent terms of twelve years followed by five years' supervised release, plus a special assessment of $100.00. Guerrero is presently incarcerated.

## II. DISCUSSION

Guerrero raises three issues on appeal: (1) whether the evidence presented at trial was sufficient to prove his guilt beyond a reasonable doubt; (2) whether the district court's instruction to the jury on the theory of aiding and abetting constituted plain error; and (3) whether the district court's instruction to the jury on the theory of deliberate ignorance constituted plain error. In reviewing a sufficiency of the evidence claim, we must view the evidence in the light most favorable to the government and the verdict must be sustained if there is substantial evidence to support it. *United States v. Hernandez*, 896 F.2d 513, 517

(11th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 159, 112 L.Ed.2d 125 (1990).

### A. *Sufficiency of the Evidence*

Guerrero claims the government did not present sufficient evidence to convict him of the crimes with which he was charged. He asserts that a reasonable jury could have found, at most, that he associated with someone who was committing a crime, but that he did not knowingly join in any conspiracy to possess cocaine base with the intent to distribute or knowingly possess cocaine base with the intent to distribute. We disagree.

In order to sustain a conviction for conspiracy with intent to distribute, the government must prove that an agreement existed between two or more persons to violate the narcotics laws, that the defendant knew of the conspiratorial goal, and that he knowingly joined or participated in the illegal venture. *United States v. Jones*, 913 F.2d 1552, 1557 (11th Cir.1990). "The existence of such an agreement may be proved by either direct or circumstantial evidence...." *Id.* The government does not have to prove that the alleged conspirator knew all of the details of the conspiracy or that he participated in every phase of the scheme. *United States v. Orr*, 825 F.2d 1537, 1543 (11th Cir.1987). The government may establish a defendant's knowing participation in the conspiracy through proof of surrounding circumstances, such as acts committed by the defendant that furthered the purpose of the conspiracy. *United States v. Iglesias*, 915 F.2d 1524, 1527 (11th Cir.1990).

To support a conviction for the substantive charge of possession of cocaine base with the intent to distribute, the evidence must establish that the defendant knowingly possessed the controlled substance with the intent to distribute it. *United States v. Montes–Cardenas*, 746 F.2d 771, 778 (11th Cir.1984). Possession may be proven by circumstantial as well as by direct evidence. *United States v. Pruitt*, 763 F.2d 1256, 1264 (11th Cir.1985), *cert. denied,* 474 U.S. 1084, 106 S.Ct. 856, 88 L.Ed.2d 896 (1986). Possession may be

constructive and in order to establish this the government may show ownership, dominion, or control over the contraband itself, or the premises or vehicle in which contraband is concealed. *United States v. Crawford*, 906 F.2d 1531, 1535 (11th Cir. 1990) (quoting *United States v. Smith*, 591 F.2d 1105, 1107 (5th Cir.1979)).

■ In the present case, the government presented sufficient evidence to support Guerrero's convictions. Guerrero assisted in leasing the warehouse and paying the rent to the property manager. When Guerrero thought the shipment was ready to be delivered and he could not locate Salgero, he had new keys made to the warehouse so he could gain access for the delivery. Guerrero met with Torra, the customs house broker, concerning the clearance of the shipment through Customs and he drove Salgero to the warehouse on the delivery date and obtained a rope to facilitate the unloading of the boxes. When Guerrero called a locksmith to open the warehouse where Salgero was enclosed for two days, he asked the locksmith to address the bill to "Carlos Sierra." Guerrero paid the locksmith in cash that same day. For his several months of effort, Guerrero claimed that he was to be paid only $200.00.

Other evidence which supports Guerrero's conviction is the testimony by Agent Benavente and Agent Shepherd. Agent Shepherd testified that he observed Guerrero drive around the warehouse a few times in a countersurveillance manner. Agent Benavente testified that the warehouse contained no business equipment, had no electricity, no name of a company on the door, and was almost completely empty. This testimony, standing alone, discredits Guerrero's claim that he was hired to work for an import business.

Guerrero's implausible version of his involvement with Salgero and with the shipment could have persuaded a reasonable jury that Guerrero either knew that the shipment contained cocaine base or that he deliberately avoided such knowledge. We find that the evidence, when taken in the light most favorable to the government, established beyond a reasonable doubt that Guerrero knowingly and voluntarily conspired with Salgero to possess and distribute cocaine base and knowingly possessed cocaine base with the intent to distribute.

### B. *Aiding and Abetting Instruction*

■ Guerrero contends that the district court erred in its charge to the jury because it failed to give a complete instruction with regard to aiding and abetting the commission of an offense. Guerrero concedes that he did not request any instruction during the trial regarding his present concerns and therefore he can raise only plain error or a defect which affects his substantial rights. *United States v. Hastamorir*, 881 F.2d 1551, 1559 (11th Cir. 1989). When defense counsel does not object to or make requests for specific jury instructions, the appellate court must apply the plain error standard and review the charge in its entirety and in the context of the entire trial. *Id.*

Guerrero relies upon *United States v. Jackson*, 526 F.2d 1236 (5th Cir.1976), where the court stated that the government failed to present sufficient evidence to prove that the defendant aided and abetted possession because there was no evidence that the defendant "exercised any measure of dominion or control over the contraband." 526 F.2d at 1237. The court did not set forth some special theory of aiding and abetting as Guerrero argues. Instead, the decision rested solely on the lack of evidence to support the verdict on that ground. Even if Guerrero believes that *Jackson* stands for the proposition that in order to convict under 18 U.S.C. § 2 the government must prove participation in each element of the substantive offense, such a legal burden has been rejected by this circuit in *United States v. Richardson*, 764 F.2d 1514, 1525 (11th Cir.), *cert. denied*, 474 U.S. 952, 106 S.Ct. 320, 88 L.Ed.2d 303 (1985).

■ In the present case, the district court instructed the jury on the aiding and abetting theory by using Special Instruction Number 6 from the Eleventh Circuit's Pattern Jury Instructions. When read as a

whole, the instruction on aiding and abetting did not prejudice Guerrero's substantial rights. Accordingly, the district court did not commit plain error by giving the instruction.

### C. *Deliberate Ignorance Instruction*

 Guerrero contends that the district court erred in giving the jury an instruction on deliberate ignorance or conscious avoidance. Since Guerrero failed to raise an objection to this charge before the jury began its deliberations, this court must examine the entire charge to determine if plain error was committed by the district court. *United States v. Lacayo*, 758 F.2d 1559, 1564 (11th Cir.), *cert. denied*, 474 U.S. 1019, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985).

In order for a deliberate ignorance or conscious avoidance instruction to be proper, the record must contain evidence which points in the direction of deliberate ignorance. *United States v. Alvarez*, 837 F.2d 1024, 1028 (11th Cir.), *cert. denied*, 486 U.S. 1026, 108 S.Ct. 2003, 100 L.Ed.2d 234 (1988). In the present case, Guerrero's testimony that he thought he was working for a legitimate import business which used a warehouse with no name on the door, with no equipment to move merchandise and without electricity was not credible. The jury could reasonably disbelieve Guerrero's version of the facts, especially in light of his claim that he was to receive only $200.00 for his participation in the venture. Guerrero asserted that he had no ownership interest in the arrangement, although he paid $84.80 in cash to the locksmith, leaving him a little over $100.00 for several months of effort. Furthermore, the fact that Guerrero was one of only two people who had complete control over a shipment of cocaine worth approximately one million dollars supports the inference that he either knew what was inside the shipment, or he consciously avoided any direct knowledge. Accordingly, the district court's decision to instruct the jury on deliberate ignorance was not plain error.

### III. CONCLUSION

The record establishes that sufficient evidence was presented by the government at trial to support Guerrero's convictions. Further, the district court did not commit plain error in its instructions to the jury on the theory of aiding and abetting and deliberate ignorance. Accordingly, we affirm Guerrero's convictions.

AFFIRMED.