[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 15, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-16533
Non-Argument Calendar

_____

D. C. Docket No. 04-00034-CR-4-01-RH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL LEVON HILLS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(August 15, 2005)

Before BLACK, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Michael Levon Hills appeals his convictions and concurrent 120-month

sentences imposed for conspiracy to distribute and to possess with intent to distribute more than 5 grams of crack cocaine, in violation of 21 U.S.C. § 846; and possession with intent to distribute more than 5 grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii), and 18 U.S.C. § 2.

## I.  BACKGROUND

On May 5, 2004, Hills spoke on the telephone with a confidential informant ("CI") who was assisting law enforcement.  During the calls, which were recorded and admitted as evidence at trial, Hills and the CI discussed "cookies," a term commonly used to refer to crack cocaine, as well as "powder" and "hard," terms used to differentiate between different forms of cocaine.  The CI told Hills the amount of drugs needed, as well as where the drug deal was to take place.  Hills told the CI that he was trying to find someone to supply the cocaine, and that he would call the CI back.

On the morning of May 6, 2004, Hills called Alford Cotton, who testified against Hills at trial.  According to Cotton's testimony, Hills called Cotton that morning to tell him that someone wanted to buy two "cookies."  Cotton testified that he promised to provide Hills with either $400 from the drug sale or $400 worth of drugs for setting up the deal.  Cotton further testified that he instructed Hills to meet him in the Winn-Dixie parking lot in Monticello, Florida, and gave

2

Hills directions. According to telephone records, several phone calls were made from Hills' home phone to Cotton's cell phone on the morning of May 6, 2004.

Cotton testified that he picked up Hills and they drove together from Tallahassee, Florida, to the Winn-Dixie in Monticello. According to Cotton, Hills said that the drugs were "clean." Meanwhile, an undercover officer accompanied the CI to the Winn-Dixie. The undercover officer testified that Cotton called the CI to find out where they were located. Shortly after the officer and CI arrived, Hills was observed exiting the Winn-Dixie and heading back towards Cotton's car. The officer testified that Hills then approached the undercover car and spoke with the CI, and that he was introduced to Hills at that time. Hills requested that the officer and CI go to Cotton's vehicle. The officer gave the CI the purchase money. As the CI started to count the money for Cotton, the officer testified that he saw Cotton retrieve a brown paper bag from under the passenger seat. Cotton handed the bag to the officer, who looked in the bag and identified it as crack cocaine. The officer witnessed the transaction, and an audiotape of the transaction was admitted into evidence at trial.

On August 10, 2004, the jury returned a verdict of guilty on both counts. The district court sentenced Hills to 120 months on each count to run concurrently, and eight years of supervised release. Hills appeals, arguing first that the evidence

3

was insufficient to support the jury's verdict on each count. With respect to the conspiracy charge, Hills argues that there was no agreement between him and his co-conspirator to sell drugs. Hills asserts that because the evidence supporting the count of possession was based solely on his co-conspirator's testimony, it should be discounted as self-serving and not credible. Hills next argues that his sentence should be vacated because the government did not refer to his prior conviction in its indictment, yet the district court used it to enhance his sentence. Hills argues that the recent decision in *Shepard v. United States*, 544 U.S. \_\_\_\_, 125 S. Ct. 1254 (2005), suggests that prior convictions might be subject to the same constitutional requirements as other facts not found by the jury or admitted by the defendant under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000).

## II. STANDARDS OF REVIEW

We review "the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the jury's verdict." *United States v. Castro*, 89 F.3d 1443, 1450 (11th Cir. 1996). Determinations of the credibility of witnesses fall within the exclusive province of the jury and may not be revisited unless the testimony is "incredible as a matter of law." *United States v. Calderon*, 127 F.3d 1314, 1325 (11th Cir. 1997) (citations omitted). To be incredible as a matter of law, the testimony must be

4

"unbelievable on its face." *Id.* (quotation marks and citation omitted). In addition, the testimony of a co-conspirator, even if uncorroborated, "is sufficient to support a conviction if it is not, on its face, incredible or otherwise insubstantial." *See United States v. Diaz*, 248 F.3d 1065, 1093-94 (11th Cir. 2001).

With regard to Hills' challenge to his sentence, we review for plain error when a defendant did not object at the district court to the government's failure to reference his prior conviction in the indictment. *See United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir.), *cert. denied* 125 S. Ct. 2935 (2005). We "may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation marks and citations omitted).

## III. DISCUSSION

### A. Sufficiency of the Evidence

To sustain a conviction for conspiracy with intent to distribute, the government must show:

> that an agreement existed between two or more persons to violate the narcotics laws, that the defendant knew of the conspiratorial goal, and

that he knowingly joined or participated in the illegal venture. . . . The government does not have to prove that the alleged conspirator knew all of the details of the conspiracy or that he participated in every phase of the scheme. The government may establish a defendant's knowing participation in the conspiracy through proof of surrounding circumstances, such as acts committed by the defendant that furthered the purpose of the conspiracy.

*United States v. Guerrero*, 935 F.2d 189, 192 (11th Cir. 1991) (internal citations omitted).

With respect to the substantive count of possession with intent to distribute, "the government must prove beyond a reasonable doubt that the defendant knowingly possessed the [controlled substance] and that he intended to distribute it." *United States v. Mejia*, 97 F.3d 1391, 1392 (11th Cir. 1996) (citation omitted). "Possession may be actual or constructive, and the latter can be established by evidence showing ownership, dominion, or control over the contraband itself or the premises on which it is concealed. Constructive possession may be shared with others, and can be established by circumstantial or direct evidence." *United States v. Montes-Cardenas*, 746 F.2d 771, 778 (11th Cir. 1984) (citation omitted). The "[i]ntent to distribute may be inferred from the quantity of [the drugs] seized." *Id.* at 778-79.

Even if someone else exercised actual control over the drugs, Hills' conviction may be affirmed because he aided and abetted the possession. *See*

*United States v. Schwartz*, 666 F.2d 461, 463 (11th Cir.1982).  Count 2 of Hills'

indictment charged a violation of 18 U.S.C. § 2 (the aiding and abetting statute) as

well as 21 U.S.C. § 841(a)(1) (the substantive possession provision).  Thus, the

trial court properly instructed the jury that the defendant could be convicted as

principals if they aided and abetted the commission of the crime.

To sustain a conviction for aiding and abetting, the government must show

that a defendant:

> associated himself with a criminal venture, participated in it as
> something he wished to bring about and sought by his actions to make
> it succeed.  Moreover, in the context of a prosecution for aiding and
> abetting the possession of [a controlled substance] with intent to
> distribute, the government must introduce evidence connecting [the]
> defendant with both aspects of the crime, possession and intent to
> distribute.

*United States v. Bain*, 736 F.2d 1480, 1487 (11th Cir. 1984) (internal quotation

marks and citations omitted).

The totality of the evidence in this case supports the jury's verdict on both

counts.  With regard to the conspiracy count, all of Hills' actions — his calls to

Cotton seeking "cookies," his request that the CI and undercover officer come over

to Cotton's vehicle, and the transaction itself — evidence an agreement between

Cotton and him to violate the narcotics laws.  Furthermore, the record supports the

jury's finding that Hills had knowledge of the conspiratorial goal and illegal

7

venture. Hills' discussion with the CI about "cookies," "powder" and "hard;" the CI's request for a certain amount of drugs; and his statement to Cotton that the drugs were "clean" indicate Hills' knowledge of the goal of the conspiracy and the illegal nature of the transaction.

In addition, with respect to the possession count, the jury could have inferred that, although it seems that Hills did not have actual possession over the drugs, he had constructive possession over them based on the terms of his deal with Cotton, i.e. that he would share profits from the transaction. Finally, the undercover officer's testimony observing the drug transaction supports the jury's finding that Hills aided and abetted his co-conspirator in possessing the drugs. Because the jury's verdicts are supported by sufficient evidence, we affirm Hills' conviction on the count of conspiracy.

**B.     *Blakely/Booker***

In *Almendarez-Torres v. United States*, 523 U.S. 224, 247, 118 S. Ct. 1219, 1233 (1998), the Supreme Court held that recidivism is not a separate element of the offense that the government must allege in the indictment and prove beyond a reasonable doubt. *See also United States v. Orduno-Mireles*, 405 F.3d 960, 962 (11th Cir. 2005) (noting that in *Booker*, the Supreme Court left its holding in *Almendarez-Torres* undisturbed). Moreover, we have noted recently that, while

8

the Supreme Court's decision in *Shepard v. United States*, __ U.S. __, 125 S. Ct. 1254 (2005), arguably cast doubt on the precedential value of *Almendarez-Torres*, the Supreme Court has not explicitly overruled *Almendarez-Torres*. *See United States v. Camacho-Ibarquen*, 410 F.3d 1307, 1316 n.3 (11th Cir. 2005). As a result, we must follow *Almendarez-Torres* as controlling precedent. *See id.*

Because the government was not required to allege Hills' prior conviction in the indictment nor prove the conviction beyond a reasonable doubt to the jury, the district court did not err, plainly or otherwise, in imposing a statutory minimum sentence under 21 U.S.C. § 841. Thus, we affirm Hills' sentence.

## IV.  CONCLUSION

Based on the foregoing, and upon review of the record and the parties' briefs, we affirm Hills' convictions and sentences.

**AFFIRMED.**