[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11245
Non-Argument Calendar
_____

D.C. Docket No. 3:14-cr-00037-TJC-MCR-1


UNITED STATES OF AMERICA,

                                                        Plaintiff - Appellee,

versus

CLAYTON RYAN MANNING,
a.k.a. Clay Manning,

                                                        Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 4, 2016)

Before MARTIN, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Clayton Manning appeals his convictions for conspiring to commit mail and wire fraud, in violation of 18 U.S.C. § 1349, and making a false statement on a matter within the jurisdiction of the FBI, in violation of 18 U.S.C. § 1001. He contends that the evidence was insufficient to convict him of conspiring to commit mail and wire fraud and, by extension, insufficient to support a conviction for making a false statement because the statement at issue was merely a denial of his involvement in the conspiracy. After review of the parties' briefs and the record, we affirm Mr. Manning's conviction.

## I

In March of 2014, a federal grand jury indicted Mr. Manning on charges of conspiring to commit mail and wire fraud (Count 1), and making a false statement on a matter within the jurisdiction of the FBI (Count 2). The indictment alleged that Mr. Manning conspired with Connie Darner and Noha Soliman to submit a fraudulent insurance claim on his personal boat and then, in May of 2013, knowingly made a false statement to FBI agents when he told them the boat had been stolen. Both Ms. Darner and Ms. Soliman, who had also been charged, pled guilty to conspiring to commit mail and wire fraud. Mr. Manning proceeded to a jury trial.

Ms. Darner, an insurance adjuster with a boat insurance company called BoatUS, was the government's first witness. Ms. Darner admitted that she

processed fraudulent insurance claims for Mr. Manning and his then-wife, Ms. Soliman.    Ms. Darner explained that Mr. Manning asked her to process a fraudulent insurance claim on his boat because he needed money for his struggling business.  Ms. Darner agreed to help.  She instructed Mr. Manning to obtain boat insurance from BoatUS, and she told him to get rid of the boat before filing the fraudulent insurance claim.    The same day Mr. Manning received insurance coverage, he filed a fraudulent theft claim. Ms. Darner testified that she had collaborated with Mr. Manning and Ms. Soliman to draft the theft-of-boat claim. After the claim was filed, Mr. Manning told Ms. Darner that he buried the boat on his uncle's property in Georgia.

The government also called Ms. Soliman, who testified that Mr. Manning switched his boat insurance to BoatUS so that he could profit from the fraudulent theft claim that Ms. Darner agreed to process.  According to Ms. Soliman, it was Ms. Darner who originally suggested the fraud scheme.  Ms. Soliman also testified that she traveled to Georgia with Mr. Manning to hide the boat on his uncle's property.

The government's next witness, FBI Special Agent Douglas Mathews, investigated the boat insurance scheme, and interviewed Mr. Manning.  During that interview, Mr. Manning maintained that the theft-of-boat claim was legitimate. He also claimed Ms. Soliman and Ms. Darner were framing him and that his

3

signature had been forged on several documents. On cross-examination, Agent Mathews testified that he sent an agent to interview Mr. Manning's uncle in Georgia, but he did not believe he had sufficient probable cause to search the Georgia property.

On October 15, 2014, the jury convicted Mr. Manning on both counts. This appeal timely followed.

## II

We review *de novo* the denial of a motion for a judgment of acquittal, viewing the evidence and drawing all reasonable inferences in the light most favorable to the government. *See United States v. Descent*, 292 F.3d 703, 706 (11th Cir. 2002). To affirm the denial of a motion for judgment of acquittal, we "need only determine that a reasonable fact-finder could conclude that the evidence established the defendant's guilt beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). "The evidence may be sufficient though it does not 'exclude every reasonable hypothesis of innocence or is not wholly inconsistent with every conclusion except that of guilt . . . . A jury is free to choose among reasonable constructions of the evidence.'" *United States v. Montes-Cardenas*, 746 F.2d 771, 778 (11th Cir. 1984) (quoting *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982) (en banc)).

4

The offenses of mail and wire fraud "require that a person (1) intentionally participates in a scheme or artifice to defraud another of money or property, and (2) uses or causes the use of the mails or wires for the purpose of executing the scheme or artifice." *United States v. Bradley,* 644 F.3d 1213, 1238 (11th Cir. 2011) (quotation marks omitted). "Proof of intent to defraud is necessary to support convictions for mail and wire fraud." *Id.* at 1239. "A jury may infer an intent to defraud from the defendant's conduct." *United States v. Maxwell,* 579 F.3d 1282, 1301 (11th Cir. 2009). Thus, "[e]vidence that a defendant personally profited from a fraud may provide circumstantial evidence of an intent to participate in that fraud." *United States v. Naranjo,* 634 F.3d 1198, 1207 (11th Cir. 2011). To obtain a conviction for conspiracy to commit mail and wire fraud, the government must prove that the defendant "knew of and willfully joined in the unlawful scheme to defraud." *Maxwell,* 579 F.3d at 1299. "[C]ircumstantial evidence can supply proof of knowledge of the scheme." *Id.*

To prove that Mr. Manning made a false statement to a law enforcement officer in violation of § 1001, "the government must prove (1) that a statement was made; (2) that it was false; (3) that it was material; (4) that it was made with specific intent; and (5) that it was within the jurisdiction of an agency of the United States." *United States v. Calhoon*, 97 F.3d 518, 523 (11th Cir. 1996).

5

## III

On appeal, Mr. Manning argues that the evidence was insufficient to support his convictions because the government's witnesses were not credible. Mr. Manning contends that the government relied on the testimony of his co-conspirators, Ms. Darner and Ms. Soliman, both of whom had strong motivations to implicate a third party in order to receive lesser sentences. According to Mr. Manning, Ms. Darner and Ms. Soliman were not credible witnesses because they did not testify consistently as to who conceptualized and initiated the conspiracy. In addition, Mr. Manning argues that Ms. Darner and Ms. Soliman did not give a plausible account because neither profited from Mr. Manning's fraudulent claim.

It is well established that "[c]redibility determinations are the exclusive province of the jury." *United States v. Parrado*, 911 F.2d 1567, 1571 (11th Cir. 1990). Therefore, we cannot revisit credibility determinations unless the testimony of the witnesses was incredible as a matter of law. *See United States v. Hewitt*, 663 F.2d 1381, 1386 (11th Cir. 1981). For testimony to be considered incredible as a matter of law, "it must be unbelievable on its face, i.e., testimony as to facts that [the witness] could not have possibly observed or events that could not have occurred under the laws of nature." *United States v. Thompson*, 422 F.3d 1285, 1291 (11th Cir. 2005) (internal quotation marks and citation omitted) (alteration in original). "The fact that [a witness] has consistently lied in the past, engaged in

6

various criminal activities, [and] thought that his testimony would benefit him . . . does not make his testimony incredible." *Id.* (quoting *United States v. Cravero,* 530 F.2d 666, 670 (5th Cir. 1976)) (alteration in original).  Under this standard, the fact that Ms. Soliman and Ms. Darner testified inconsistently about who originally devised the plan to defraud BoatUS does not render their testimony incredible as a matter of law.  Nor does the fact that both witnesses agreed to provide their testimony after pleading guilty to the conspiracy charge.

Mr. Manning also argues that the evidence was insufficient to support his convictions because Agent Mathews did not believe there was probable cause to search the Georgia property where the boat was purportedly buried.  But Agent Mathews' decision not to search the Georgia property does not have any bearing on the sufficiency of the evidence at trial.  For one thing, the probable cause inquiry focuses on whether there exists a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  Agent Mathews, and the jury, could have reasonably concluded that Mr. Manning conspired to commit mail and wire fraud without also finding that the boat was likely to be found in Georgia.  Therefore, Agent Mathews' testimony does not cast doubt on the sufficiency of the evidence.

Mr. Manning's only argument with respect to his false statement conviction is that it was tied to Count 1 "in an essential fashion" because his statement to

Agent Mathews—that his boat was indeed stolen and the theft-of-boat claim was legitimate—was just the truthful denial of his involvement in the conspiracy. Mr. Manning argues that because there was insufficient evidence to convict him of the conspiracy, there was insufficiency evidence to convict him of making a false statement. Because we find that the evidence was sufficient to support a conviction on Count 1, Mr. Manning's argument with respect to Count 2 fails.

## IV

Drawing all reasonable inferences in favor of the government, we hold that a reasonable trier of fact could find that the evidence established Mr. Manning's guilt beyond a reasonable doubt. We therefore affirm Mr. Manning's convictions.

**AFFIRMED.**