# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 4, 2013

## STATE OF TENNESSEE v. CARLOS SMITH

**Appeal from the Criminal Court for Shelby County**
**No. 10-02597      James C. Beasley, Jr., Judge**

---

**No. W2012-01931-CCA-R3-CD  - Filed August 29, 2013**

---

The defendant, Carlos Smith, appeals his Shelby County Criminal Court jury convictions of two counts of attempted second degree murder, two counts of aggravated assault, and one count each of aggravated robbery, especially aggravated burglary, employing a firearm during a dangerous offense, and being a convicted felon in possession of a handgun, claiming that the trial court erred by denying his motion to sever offenses and that the State violated the tenets of *Brady v. Maryland*, 373 U.S. 83 (1963).  Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JEFFREY S. BIVINS, JJ., joined.

Brett B. Stein, Memphis, Tennessee, for the appellant, Carlos Smith.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Pamela Fleming and Jose Leon, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The facts of this case are largely undisputed.  Late in the evening of November 2, 2009, the defendant, his girlfriend, Kelsie Brunner, and his friend, Carl Hall, decided to rob Reginald Milam.  The defendant, Ms. Brunner, and Mr. Hall proceeded to a local Wal-Mart, where Ms. Brunner purchased two ski masks, a pair of gloves and a set of bolt cutters.  Ms. Brunner then drove the men to Mr. Milam's residence.  The defendant and Mr. Hall exited the vehicle, wearing the ski masks rolled up on their heads to resemble caps.

The defendant and Mr. Hall accosted George McColley, Jr, and Richard

Hardin, Mr. Milam's brother-in-law, as the two gentlemen were returning to Mr. Milam's residence, where they resided. The defendant and Mr. Hall, both of whom were armed and wearing ski masks, forced Mr. McColley and Mr. Hardin into the residence at gunpoint, demanding to see Mr. Milam. In a back bedroom of the residence, the gunmen encountered Mr. Milam, his wife, Lillian Hardin, and two of the couple's grandchildren. The defendant held them all, including Mr. McColley and Mr. Hardin, at gunpoint and demanded money. Renell Hardin, Mr. Milam's and Mrs. Hardin's adult daughter, heard the commotion and left her bedroom. When the defendant and Mr. Hall noticed her, they forced her into the back bedroom at gunpoint. At some point during the fracas, a struggle ensued, and the defendant and Mr. Hall shot both Mr. Hardin and Mr. McColley. Mr. McColley also managed to stab Mr. Hall in the back of the neck. The defendant and Mr. Hall then fled the scene with approximately $300 to $400 in cash, and they returned to Ms. Brunner's vehicle. The defendant told Ms. Brunner that "the people in the house weren't compliant, that they got into a physical altercation and at that point [the defendant] had to shoot them."

On April 15, 2010, the Shelby County grand jury issued an 11-count indictment against the defendant, Mr. Hall, and Ms. Brunner, stemming from these criminal offenses. The defendant was charged with two counts of attempted second degree murder in the shootings of Mr. Hardin and Mr. McColley, and two counts of aggravated assault committed against Mrs. Hardin and her daughter, Renell Hardin. In addition, the defendant was charged with the aggravated robbery of Mr. Milam,[1] the especially aggravated burglary of Mr. Hardin's residence, employing a firearm during the commission of a dangerous felony, and being a felon in the possession of a handgun.

The trial court conducted a jury trial in January 2012. Mr. McColley, Mr. Hardin, Mrs. Hardin, Ms. Renell Hardin, and Lajettie Pegues, one of Mr. Milam's and Mrs. Hardin's daughters, all provided similar testimony about the events of November 2-3, 2009.[2] Ms. Brunner testified that she had been charged with facilitation of especially aggravated robbery for her role in the offenses and confirmed that she had been convicted of the felony of reckless aggravated assault in 2008. Ms. Brunner denied that she had been offered a deal in exchange for her testimony against the defendant. Christina Lane with the Shelby County Criminal Court Clerk's Office testified that the defendant was charged with aggravated robbery in July 2000 and that he was ultimately convicted of that crime. Immediately following Ms. Lane's testimony, the trial court instructed the jury as follows:

---

[1]The defendant was originally charged, in Count 3 of the Indictment, with the especially aggravated robbery of Mr. Milam. The Count was amended by consent to aggravated robbery on April 21, 2011.

[2]Mr. Milam passed away in February 2010.

-2-

Ladies and gentlemen, if from the evidence presented you find that [the defendant] has been convicted of a prior crime you can consider that evidence only for the purpose of its effect on the count of the indictment that alleges that he is a convicted felon in possession of a firearm. You are not to consider it for any other purpose. It doesn't go to whether he's guilty, or not guilty of any of the other charges involved in any of the other counts of the indictment. It is only being allowed to be presented to you for the sole purpose of that particular count that alleges that he has previously been convicted of a felony. But, you are not to base you[r] decision on the rest of the charges based upon that conviction. Only for that count of the indictment are you to use it.

Once the State rested its case, the defendant moved for a judgment of acquittal, which the trial court denied. Following a *Momon* colloquy, *see State v. Momon*, 18 S.W.3d 152, 161-62 (Tenn. 1999), the defendant elected not to testify and chose to present no proof. The jury convicted the defendant as charged on all counts. Following a sentencing hearing, the trial court imposed an effective sentence of 120 years' incarceration.

Following the denial of his timely but unsuccessful motion for new trial, the defendant filed a timely notice of appeal. In this appeal, the defendant challenges the trial court's refusal to sever the offenses and contends that the State violated the requirements of *Brady*. We consider each claim in turn.

## I. Severance

The defendant contends that the trial court erred by denying his motion to sever the charge of being a felon in possession of a handgun from the remaining offenses. He argues that informing the jury, prior to the presentation of any proof, that the defendant had been previously convicted of a crime identical to that with which he was charged in the instant case would be unfairly prejudicial and indicative of the defendant's propensity to commit aggravated robbery. The State asserts that Tennessee Rule of Criminal Procedure 8 required joinder of the offenses because they were part of a single criminal episode.

### A. General Principles

We review the propriety of a trial court's decision regarding the consolidation of indictments or severance of charges for abuse of discretion. *See State v. Garrett*, 331 S.W.3d 392, 401 (Tenn. 2011) (citing *Spicer v. State*, 12 S.W.3d 438, 442 (Tenn. 2000)); *see*

*also State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *Garrett*, 331 S.W.3d at 401 (citing *State v. Jordan*, 325 S.W.3d 1, 39 (Tenn. 2010)).

"Before a trial court may deny a severance request, it must hold a hearing." *State v. Dotson*, 254 S.W.3d 378, 387 (Tenn. 2008). Because the determination of whether multiple offenses should be joined or separated for trial establishes a format for trial, the issue obviously must be presented and resolved before trial. *See Garrett*, 331 S.W.3d at 403; *see also* Tenn. R. Crim. P. 13(b) (providing that a trial court may order severance of offenses before trial); Tenn. R. Crim. P. 14(a)(1)(A) (providing that a defendant, except in the event of a later arising ground, shall move to sever offenses "before trial"). The trial court must base its decision regarding severance on "the evidence and arguments presented at the hearing," and, as a result, our review on appeal is limited "to that evidence, along with the trial court's findings of fact and conclusions of law." *Spicer*, 12 S.W.3d at 445; *see also Garrett*, 331 S.W.3d at 404 (where supreme court conducted its "analysis on the basis of the evidence adduced at [the d]efendant's trial instead of only the evidence adduced at the hearing" because trial court failed to hold a pretrial hearing).

### B. Severance Hearing Evidence and Trial Court's Findings of Fact and Conclusions of Law

At the severance hearing, defense counsel argued that "to tell the jury on the front end in an indictment, that [the defendant] has been convicted of . . . a prior felony of exactly the same charge as he is being tried, . . . would be so prejudicial that [the defendant] . . . could not receive a fair and impartial trial with the presumption of innocence that is afforded to him." The State responded that "this is a case of mandatory join[d]er" because "all the facts at issue give rise out of the crimes that were committed, and whether [the defendant] had a gun and was a convicted felon at the time." The trial court ruled as follows:

> I would have to say that the facts would have to be tried, the exact same facts would have to be tried again. That is why I would say that under the law these cases have to be indicted together and under those circumstances it is unfortunate, but I have to agree, that I think the law has been laid out that one of the elements of this offense is that while possessing this firearm [the defendant] was aware that he had a prior criminal conviction for a crime involving a deadly weapon, which is an element of the offense, which has to be proven.
>
> Not only did he possess it, but at the time he was aware

-4-

that he had been previously convicted of aggravated robbery, a felony involving the use of a deadly weapon, which makes it a completely, separate offense, but because it would be joined offenses – are all joined under the rules mandatorily. I am of the opinion that it would have to be tried together.

And, I can only do this, due to the nature of the law, being what it is, I can only admonish the jury that they are only allowed to use that for purposes of the elements of this particular offense that's alleged in count nine. They are not to use it for anything else.

It obviously can't go as a propensity, or be allowed for them to consider as to whether or not [the defendant] is guilty of this offense.

. . . .

But, as to the request to sever, for the grounds that you have stated, I am especially going to deny the motion and allow this matter to go forward with an admonition to the jury that they are not to consider it for any purpose, other than, whether or not he's guilty of that particular count of the indictment.

*C. Relationship Between Procedure Rules 8 and 14 and Evidence Rule 404(b)*

Here, all the offenses were charged in a single indictment. Tennessee Rule of Criminal Procedure 8 governs both mandatory and permissive joinder of offenses. Pursuant to that rule, offenses must be joined if they are:

(A) based on the same conduct or arise from the same criminal episode;

(B) within the jurisdiction of a single court; and

(C) known to the appropriate prosecuting official at the time of the return of the indictment(s), presentment(s), or information(s).

Tenn. R. Crim. P. 8(a). Offenses may be joined for trial if "(1) the offenses constitute parts of a

common scheme or plan; or (2) they are of the same or similar character." Tenn. R. Crim. P. 8(b). Regardless whether the joinder of offenses was mandatory or permissive, the defendant may file for a severance of offenses pursuant to Tennessee Rule of Criminal Procedure 14. In cases of mandatory joinder, when the defendant asks for a severance prior to trial, "the court shall grant a severance of offenses . . . when the court finds a severance appropriate to promote a fair determination of the defendant's guilt or innocence of each offense." Tenn. R. Crim. P. 14(b)(2). In cases of permissive joinder, "the defendant has the right to a severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible in the trial of the others." Tenn. R. Crim. P. 14(b)(1).

Thus, the first question we must answer is whether the joinder of offenses in a single indictment in this case was mandatory or permissive. In *State v. Johnson*, 342 S.W.3d 468 (Tenn. 2011), our supreme court adopted "the criteria for a 'single criminal episode' found in the ABA Standards for Criminal Justice." *Id.* at 475. Under those standards, for principles of mandatory joinder to apply, "the acts to be included in the same criminal episode must occur simultaneously or in close sequence and must occur in the same place or in closely situated places." *Id.* The court observed that

> in order for a single criminal episode to exist, the "proof of one offense necessarily involves proof of the others." 2 ABA Standards for Criminal Justice § 13-1.3 cmt., at 13.10. This means that the proof of one offense must be 'inextricably connected' with the proof of the other, *see State v. Shepherd*, 902 S.W.2d 895, 904 (Tenn. 1995), or that the proof of one offense forms a "substantial portion of the proof" of the other offense. *See United States v. Montes-Cardenas*, 746 F.2d 771, 776 (11th Cir. 1984).

*Id.*

In the instant case, the offenses at issue unquestionably arose from the same criminal episode, were within the singular jurisdiction of the trial court, and were all known to the State at the time of the return of the indictment. *See* Tenn. R. Crim. P. 8(a). The defendant's use of the handgun factored into each of his charged offenses: attempted second degree murder, aggravated robbery, especially aggravated burglary, and aggravated assault, as well as the employment of the handgun during the commission of a dangerous felony. As such, proof of the defendant's status as a convicted felon in possession of a handgun necessarily involved proof of the other offenses. *See Johnson*, 342 S.W.3d at 475. We conclude that the joinder of this offense with the others was mandatory pursuant to Rule 8.

*D. Severance Under Rule 14(b)(2)*

Having determined that joinder of the defendant's offenses was mandatory, we must now consider whether severance was "appropriate to promote a fair determination of the defendant's guilt or innocence of each offense." Tenn. R. Crim. P. 14(b)(2). Our review of the record reveals that the trial court gave a thorough limiting instruction to the jury following the proof of the defendant's prior felony conviction, which we must presume the jury followed, and we conclude that this instruction adequately shielded the harmful effect, if any, of the defendant's prior conviction. *See, e.g.*, *State v. Banks*, 271 S.W.3d 90, 134 (Tenn. 2008) (stating that "[j]uries are presumed to follow the trial court's instructions"). Accordingly, we find no abuse of discretion in the trial court's refusal to sever the offenses.

Although the defendant relied solely on severance in addressing this issue both at trial and on appeal, we observe that there were two avenues available to him that might have proven more efficacious. First, the defendant could have offered to stipulate to his prior felony conviction, which would have shielded the jury from discovering the nature of the prior felony. *See State v. James,* 81 S.W.3d 751, 762 (Tenn. 2002) (holding that "when the sole purpose of introducing evidence of a defendant's prior convictions is to prove the status element of the offense, and when the defendant offers to stipulate his status as a felon, the probative value of the evidence is, as a matter of law, outweighed by the risk of unfair prejudice"); *see also State v. Marvin Senathan Hall, Jr.*, No. W2008-00933-CCA-R3-CD, slip op. at 8 (Tenn. Crim. App., Jackson, June 12, 2009), *perm. app. denied* (Tenn. Nov. 30, 2009) (noting that "a defendant can offer to stipulate to the elements of an offense, but by doing so cannot prevent the jury from learning of an element of the offense or the stipulation"). Second, the defendant had the option of requesting bifurcated proceedings. This practice has been used in the trial courts of this state and has not been criticized by our appellate courts. *See, e.g.*, *State v. Taft Arkey Murphy*, No. M2007-00403-CCA-R3-CD (Tenn. Crim. App., Nashville, Oct. 27, 2008), *perm. app. denied* (Tenn. Mar. 23, 2009); *State v. Alonzo Maurice Rogan*, No. M2002-01603-CCA-R3-CD (Tenn. Crim. App., Nashville, Jan. 22, 2004), *perm. app. denied* (Tenn. Nov. 15, 2004). However, because the defendant chose neither of these alternative methods, we need not address this issue further.

*II. Brady*

The defendant also contends that the State violated the requirements of *Brady v. Maryland*, 373 U.S. 83 (1963), when the State failed to properly inform him, prior to trial, that it had entered into an agreement with Ms. Brunner to charge her with the lesser offenses of facilitation of aggravated robbery and facilitation of especially aggravated burglary in exchange for her testimony at trial. The State submits that it gave no preferential treatment to Ms. Brunner, and, as such, the defendant could not establish a *Brady* violation.

The constitutional right to a fair trial imposes upon the State "duties consistent with the[] sovereign obligation to ensure 'that justice shall be done' in all criminal prosecutions." *Cone v. Bell*, 556 U.S. 449, 451 (2009) (quoting *United States v. Agurs*, 427 U.S. 97, 111 (1976) (citation and internal quotation marks omitted)). In *Brady*, the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.*, 373 U.S. at 87. "Evidence 'favorable to an accused' includes evidence deemed to be exculpatory in nature and evidence that could be used to impeach the [S]tate's witnesses." *Johnson v. State*, 38 S.W.3d 52, 55-56 (Tenn. 2001) (citing *State v. Walker*, 910 S.W.2d 381, 389 (Tenn. 1995); *State v. Copeland*, 983 S.W.2d 703, 706 (Tenn. Crim. App. 1998); *United States v. Bagley*, 473 U.S. 667, 676 (1985)). The duty to disclose exculpatory evidence extends to all "favorable information" irrespective of whether the evidence is admissible at trial. *State v. Robinson*, 146 S.W.3d 469, 512 (Tenn. 2004) (appendix); *Johnson*, 38 S.W.3d at 56. *Brady* and its progeny create in the "individual prosecutor . . . a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

To prove a *Brady* violation, a defendant must demonstrate:

(1) that he requested the information (unless the evidence is obviously exculpatory, in which case the [S]tate is bound to release the information whether requested or not),

(2) that the State suppressed the information,

(3) that the information was favorable to the defendant, and

(4) that the information was material.

*Johnson*, 38 S.W.3d at 56 (citing *State v. Edgin*, 902 S.W.2d 387, 390 (Tenn. 1995); *Walker*, 910 S.W.2d at 389); *see also Strickler v. Greene*, 527 U.S. 263, 281-82 (1999) ("There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."). The evidence is deemed material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682.

The question is not whether the defendant would more likely

than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'

*Kyles*, 514 U.S. at 434 (quoting *Bagley*, 473 U.S. at 678). Plainly stated, establishing materiality requires a "showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435; *see Johnson*, 38 S.W.3d at 58.

In the instant case, Ms. Brunner was charged from the outset with facilitation of aggravated robbery and facilitation of especially aggravated burglary, and these charges were included in the same indictment as the charges against the defendant. Without question, the defendant was aware of these charges against Ms. Brunner well in advance of trial. The defendant claims, however, that at Ms. Brunner's sentencing hearing on July 9, 2012, he learned, for the first time, that the State had chosen to charge her with facilitation in exchange for her testimony against the defendant at trial. He argues that, first, this directly contradicted Ms. Brunner's trial testimony, in which she specifically denied entering into any deals with the State in exchange for her testimony, and second, that had he been aware of this "deal," he could have utilized it in his cross-examination of Ms. Brunner at trial to undermine her credibility.

Our review of the record reveals that Ms. Brunner did, in fact, acknowledge on direct examination at trial that she was charged with facilitation rather than the more serious crimes of attempted murder and aggravated robbery because of her "assistance to the police on the front end." Despite the defendant's apparent failure to notice this admission at trial, he nonetheless managed to conduct a very thorough cross-examination of Ms. Brunner regarding her role in the crimes at issue.

Moreover, as the trial court pointed out in ruling on this issue at the hearing on the defendant's motion for new trial, the State strongly opposed probation at Ms. Brunner's sentencing hearing, evincing that she received no special treatment:

Ms. Brunner was indicted from the beginning for facilitation. She wasn't indicted for the aggravated robbery at all. She was indicted for facilitation. She was questioned about being indicted for facilitation. She testified about being indicted for facilitation and she testified that there were no promises made.

And, frankly, at the guilty plea I (indiscernible) the crime of facilitation. I didn't get the impression that [the prosecutor] had made her any promises because . . . Ms. Brunner was asking for probation and [the prosecutor] wanted her to go to jail. So, I mean, I sure don't see that there was any pre-agreement at least based on my impression at the probation hearing for Ms. Brunner that she was going to get any . . . special treatment other than you're charged with facilitation and not aggravated robbery.

     . . . .

As to any deals struck with Ms. Brunner. I think she testified that the only arrangements or the only issues was that she had been indicted for facilitation and not aggravated robbery and that was pointed out to the jury and she was voir dired about that. But she had no deals with regard to a sentence imposed. And even at her sentencing hearing I don't believe that there was any proof whatsoever that there was any deal struck between her and the State other than she testified then and told the truth, then that would be taken into account.

I really don't recall exactly what she said as to the deal. Because when she took the stand in her sentencing hearing I think the State was very adamant about the fact that she needed to go to jail and argued very forcefully that she needed to go to jail. So if there was a deal struck I don't know what it is. And I'm not familiar with anything other than that she was charged with facilitation. I understand your argument that she could [have] been charged with aggravated robbery and I think . . . she was cross-examined about all of that. So I think the jury had the right to understand that. And I don't think that that was an issue that [a]ffected the outcome of the trial. So I noted your argument but I just, I don't think that it has any merit.

In our view, the record fully supports the ruling of the trial court. Nothing in the record indicates that the State suppressed any favorable information. As we have already pointed out, the defendant was aware of the charges against Ms. Brunner from the beginning, and Ms. Brunner acknowledged at trial that she was charged with facilitation, at least in part, due to her cooperation and testimony. The State opposed probation for Ms. Brunner, clearly

-10-

evincing that no agreement was reached with respect to Ms. Brunner's sentencing. As such, the defendant has failed to establish a *Brady* violation.

## *III. Conclusion*

The trial court did not abuse its discretion by refusing to sever the defendant's offenses, and the defendant failed to establish a *Brady* violation. Accordingly, we affirm the judgments of the trial court.

_____

JAMES CURWOOD WITT, JR., JUDGE