[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13576
Non-Argument Calendar
_____

D.C. Docket No. 5:16-cr-00007-MTT-CHW-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MARK MANN,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(August 30, 2018)

Before JILL PRYOR, HULL and JULIE CARNES, Circuit Judges.

PER CURIAM:

Mark Mann appeals his conviction and sentence for possession of an unregistered firearm in violation of 26 U.S.C. §§ 5841, 5845(a), 5861(d), and 5871. He argues that the district court erred in denying his motion for judgment of acquittal and that his 97-month sentence is both procedurally and substantively unreasonable. After careful review, we affirm.

## I.    BACKGROUND

Mann was charged with one count of knowingly possessing an unregistered firearm, and his codefendant, Henry McGirt, was charged with aiding and abetting Mann. McGirt pled guilty to one count of aiding and abetting a false entry in a firearm record, in violation of 18 U.S.C. §§ 922(m), 924(a)(3)(B), and 2. Mann proceeded to trial.

The evidence at trial established the following. Mann, who is blind, owned The Rifleman, a gun store in Macon, Georgia. Mann sent his employee and store manager McGirt to Michigan to pick up a Lahti Finland antitank rifle from Dale Wiseman. Because it was a destructive device under the National Firearms Act (NFA), the Lahti qualified as an NFA weapon and was required to be registered through the Bureau of Alcohol, Tobacco and Firearms (ATF) National Firearms Branch on the National Firearms Registration and Transfer Record (NFRTR).

Mann sent McGirt to Michigan with two ATF forms—ATF Form 4 and ATF Form 5. ATF Form 4 is required to transfer possession of an NFA weapon.

2

Before the NFA weapon can be transferred, the National Firearms Branch must review ATF Form 4 and approve the transfer. Until the transfer is approved, the NFA weapon must stay with the original owner. ATF Form 5 may be used to temporarily transfer an NFA weapon for service or repair. To temporarily transfer an NFA weapon under ATF Form 5, no approval from the National Firearms Branch is required.

McGirt understood that he was to purchase the Lahti from Wiseman. Acting under orders from Mann, McGirt had Wiseman sign both ATF forms. He paid Wiseman a total of $11,000—in a combination of cash and two checks—that Mann had given him to purchase the Lahti. McGirt then took the Lahti to the Knob Creek Machine Gun Shoot. When the event was over, the two men took the Lahti to Macon and stored it in a vault at The Rifleman. Mann submitted the ATF Form 4 to the National Firearms Branch. The Branch subsequently disapproved the transfer.

Meanwhile, Wiseman attempted to deposit the two checks for the Lahti, but they were returned for insufficient funds. Wiseman's daughter, Sheila Frison, called the ATF. Frison had assisted her father in selling the Lahti, speaking to Mann over the phone and sending him photographs of the weapon and included accessories. Frison told the ATF about the two returned checks and explained that she considered the gun to be stolen because her father had not received the agreed-

3

upon payment.  Frison then got in touch with Mann, who sent her money orders to cover the overdrawn checks.  Frison cashed the money orders and at that point considered the sale of the Lahti to be final.

The ATF nonetheless followed up on Frison's complaint about the returned checks.  An ATF specialist searched the NFRTR, saw that the Lahti was registered to Wiseman, and froze the record so that the weapon could not be transferred.  Another ATF specialist conducted a Facebook search and found photographs of the Lahti advertised for sale on The Rifleman's Facebook account.  An undercover ATF officer then visited The Rifleman store and discussed the Lahti with employees; he was told that it was stored in the back.  ATF agents obtained a search warrant and located the Lahti in the store's vault.  They seized the weapon.

During Mann's trial, the government also presented evidence of three other NFA weapons purchases that Mann had made.  Marion Martin sold Mann a machine gun.  A year after the sale, McGirt called Martin and asked him to write a letter indicating that the weapon was being repaired, tested, and evaluated.  Martin wrote the letter even though there had been no conversation about repair or maintenance when Mann purchased the gun.

Mann also purchased a machine gun from Michael Holliday.  Holliday's wife testified that the weapon was not in need of repair and was not given to Mann for the purpose of repair.  ATF agents found the gun in The Rifleman's vault.  No

4

ATF forms showed that Mann ever had registered the weapon in his name with the National Firearms Branch.

Margie Wood gave a machine gun to Mann to sell for her on consignment. Don Perry purchased Wood's machine gun on a gun website. Perry later learned the seller was The Rifleman. As with Holliday's weapon, no ATF forms showed that the gun ever was registered to Mann. Instead, the ATF Form 4 showed a transfer directly from Wood to Michael Smith, a Federal Firearms Licensee in Mississippi to whom Perry had requested the weapon be transferred after he purchased it.

Mann testified in his own defense at trial. He acknowledged that the Lahti was a destructive device but said that he took possession of it for service and evaluation, planning to buy it only if everything checked out okay. He testified that he had told McGirt that Wiseman was supposed to hold the checks until Mann had been able to evaluate the weapon; according to Mann, the checks had bounced because Wiseman had failed to wait for a final determination. Mann also explained that he often called federal agents at the ATF Branch in Martinsburg, West Virginia for advice about navigating the federal regulations regarding NFA weapons. He testified that he spoke to an agent named Ernie Litner at the ATF Branch who told him he could keep the Lahti while waiting for the ATF Form 4 approval because he also had completed ATF Form 5.

5

In rebuttal, the government presented evidence that Ernie Litner had not been employed at the Martinsburg ATF Branch during the relevant time; thus he would not have been available to answer Mann's questions about transferring the Lahti.  The government also recalled McGirt, who testified that he had performed no repairs to the Lahti, had not seen other employees repair or service the Lahti, and had never had discussed with Mann that Wiseman should hold the checks and not cash them.  The jury found Mann guilty of possession of an unregistered firearm.

Before the jury verdict, Mann moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29.  He argued the evidence showed that he possessed the Lahti properly under an ATF Form 5 because he was evaluating it to determine its condition.  The district court denied Mann's motion after the trial, finding that the evidence was sufficient for the jury to have found that Mann possessed the Lahti knowing that it was not registered to him and that Mann's "purported reliance on the 'repair and evaluation' exception was a sham."  Doc. 109 at 2.[1]

Mann proceeded to sentencing.  His base offense level was 18 under United States Sentencing Guideline § 2K2.1(a)(5).  After receiving several enhancements, Mann's total offense level was 30.  His criminal history category was I.

---

[1] Citations to "Doc. #" refer to the numbered district court docket entries.

6

Accordingly, his guidelines range, as limited by the statutory maximum for his statute of conviction, was 97 to 120 months of imprisonment.  The district court overruled Mann's objections to the various enhancements and concluded that the guidelines range had been calculated correctly.

In arguing for a reduced sentence, Mann pointed to the disparity between his guidelines range and McGirt's sentence of five years' probation.  He also requested that the court vary downward based on his lack of a criminal record and the nature of the offense.  He argued that as a blind person attempting to maintain records and adhere to complicated regulations, he was forced to rely on his employees and that, although he had made some accounting errors, he lacked any criminal intent.

The district court stated on the record that it had considered the advisory guidelines and the 18 U.S.C. § 3553(a) factors and had made an individualized assessment.  The court found that the Mann had not committed mere record-keeping errors, but rather that he intentionally had violated laws designed to regulate dangerous weapons.  The court sentenced Mann to 97 months' imprisonment, followed by two years of supervised release.  This is Mann's appeal.

## II.    STANDARDS OF REVIEW

We review a challenge to the denial of a Rule 29 motion for judgment of acquittal *de novo*.  *United States v. Chafin*, 808 F.3d 1263, 1268 (11th Cir. 2015).

7

We will uphold the district court's denial of a motion for judgment of acquittal if a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.* We view the evidence in the light most favorable to the government, resolving all reasonable inferences in favor of the guilty verdict. *Id.* "It is not necessary for the government to disprove every reasonable hypothesis of innocence, as a jury is free to choose among reasonable constructions of the evidence." *United States v. Foster*, 878 F.3d 1297, 1304 (11th Cir. 2018) (internal quotation marks omitted).

"It is well established that credibility determinations are the exclusive province of the jury." *United States v. Croteau*, 819 F.3d 1293, 1304 (11th Cir. 2016) (internal quotation marks omitted). We assume the jury made all credibility choices in support of the verdict. *Id.* at 1305. A criminal defendant who chooses to testify "runs the risk that if disbelieved the jury might conclude the opposite of his testimony is true," and "[s]uch an inference . . . may be considered substantive evidence of his guilt." *Id.* (internal quotation marks omitted).

We review the reasonableness of a sentence for an abuse of discretion. *United States v. Cubero*, 754 F.3d 888, 892 (11th Cir. 2014). Our review is a two-step process: first, we ensure that no significant procedural error occurred; second, we ensure that the sentence is substantively reasonable under the totality of the circumstances and in light of the 18 U.S.C. § 3553(a) factors. *Id.*

## III.  ANALYSIS

On appeal, Mann argues (1) the district court erred in denying his motion for judgment of acquittal because the evidence was insufficient to support his conviction, and (2) his 97-month sentence was procedurally and substantively unreasonable.  We address each issue in turn.

### A.    The Evidence at Trial Was Sufficient to Establish that Mann Possessed an Unregistered Firearm.

Mann argues that the evidence was insufficient to prove that he possessed an unregistered firearm and that the district court thus erred in denying his motion for judgment of acquittal.  It is unlawful for any person to receive or possess a firearm subject to NFRTR registration if the firearm is not registered to him in the NFRTR. 26 U.S.C. § 5861(d).  To sustain a conviction under § 5861(d), the government needed to prove that Mann knowingly possessed the Lahti and that the Lahti was not registered to him in the NFRTR.  *See United States v. Montes-Cardenas*, 746 F.2d 771, 779 (11th Cir. 1984).  "Possession itself is sufficient, and the government need not prove that the defendant knew that registration was required. Possession may be actual or constructive and can be proven by circumstantial evidence."  *Id.* (citation omitted).

The evidence was sufficient for a reasonable trier of fact to conclude that Mann possessed an NFA weapon that was not registered to him in the NFRTR. The government submitted evidence that Mann paid for the Lahti, took the weapon

9

to his store, kept it in his vault, and advertised it for sale. Additionally, the government offered evidence that the ATF Form 4 that Mann submitted was disapproved and that the weapon was not registered in Mann's name.

Indeed, Mann does not dispute that he had possession of the Lahti and that it was not registered to him in the NFRTR. He argues, however, that the government failed to prove that he and Wiseman entered into a contract for sale of the weapon. Instead, Mann insists, the evidence showed that he took possession of the weapon under an ATF Form 5—for temporary evaluation and service—and thus he was not required to have registered it in his name. We are unconvinced.

First, the government had no obligation to prove that Wiseman sold Mann the weapon because "[p]ossession itself is sufficient." *Id.* Second, the jury was entitled to reject Mann's defense that he possessed the weapon only for service and evaluation and thus was not required to have registered it under his name. The government submitted evidence that neither McGirt nor Frison believed that Mann had taken possession of the Lahti for service or repair, the weapon was advertised for sale on The Rifleman's Facebook page, and Mann had engaged in transactions in the past where he either failed to register an NFA weapon in his name or later represented that he had taken a weapon for service or repair even though the other party understood that Mann had purchased the weapon.

Additionally, despite Mann's testimony that he took possession of the Lahti to evaluate it and that he had been assured by an ATF agent that his completion of an ATF Form 5 allowed him lawfully to possess the weapon pending approval of a transfer, the jury could have disbelieved him and found instead that the ATF Form 5 was a sham and that Mann had not possessed the Lahti for evaluation and repair. *See Croteau*, 819 F.3d at 1305. We assume the jury made all credibility determinations in favor of the guilty verdict. *See id.* at 1304. In sum, a reasonable fact finder could have found that the government proved beyond a reasonable doubt that Mann unlawfully possessed an unregistered firearm; the district court thus did not err in denying Mann's motion for judgment of acquittal.

**B.     Mann's 97-Month Sentence Was Procedurally and Substantively Reasonable.**

### 1. Procedural Reasonableness

Mann argues that his sentence was procedurally unreasonable because the district court failed to provide specific reasons for the sentence, in violation of 18 U.S.C. § 3553(c)(2). The sentencing court must set forth sufficient explanation to satisfy the appellate court that it considered the parties' arguments and had a reasoned basis for exercising its legal decision making authority, *Rita v. United States*, 551 U.S. 338, 356 (2007), but the court need only acknowledge that it considered the § 3553(a) factors and need not discuss each of these factors at sentencing, *United States v. Amedeo*, 487 F.3d 823, 832 (11th Cir. 2007).

11

Here, the sentence was procedurally reasonable because the district court gave sufficient reasons for the sentence.  As an initial matter, Mann's argument that the district court should have provided more detailed reasoning for his sentence because the court varied upward from the guidelines range is unpersuasive because the district court did not vary upward.  In fact, the district court imposed a sentence at the very bottom of Mann's guidelines range.[2] Additionally, the district court stated on the record that it had considered the § 3553(a) factors and explained that Mann's offense was the result of willful and dangerous violations of the law.  This was sufficient to demonstrate the court's reasoned basis for exercising its decision making authority.  *Rita*, 551 U.S. at 356. Mann's sentence thus was procedurally reasonable.

## 2.  Substantive Reasonableness

Mann's sentence also was substantively reasonable.  Under 18 U.S.C. § 3553(a), the district court is required to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a)(2)—the need to reflect the seriousness of the offense; promote respect for the law; provide just punishment; deter criminal conduct; protect the public from the defendant's future criminal conduct; and effectively provide the defendant with educational or

---

[2] Mann does not argue on appeal that the district court miscalculated the guidelines range or erred in applying any enhancements; he thus has abandoned those issues.  *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).

vocational training, medical care, or other correctional treatment.  18 U.S.C. § 3553(a)(2).  The court also must consider the nature and circumstances of the offense; the history and characteristics of the defendant; the kinds of sentences available; the applicable guidelines range; the pertinent policy statements of the Sentencing Commission; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to victims.  *Id.* § 3553(a)(1), (3)-(7).  In conducting our review, we consider the totality of the circumstances and whether the statutory factors in 18 U.S.C. § 3553(a) support the sentence in question.  *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).  Although we do not automatically presume a within-guidelines sentence to be reasonable, ordinarily we expect it to be.  *United States v. Asante*, 782 F.3d 639, 648 (11th Cir. 2015).

A district court abuses its discretion and imposes a substantively unreasonable sentence "only when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors."  *United States v. Roasales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015) (internal quotation marks omitted).  The weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court, *United States v. Langston*, 590 F.3d 1226, 1237 (11th Cir. 2009), and we may vacate a sentence "only if[] we are left with the definite and firm conviction that the district

court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case," *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (internal quotation marks omitted).

The 97-month sentence—which was at the bottom of Mann's guidelines range—was substantively reasonable.  Mann argues that there was a large, unwarranted disparity between his sentence and McGirt's, but McGirt was a subordinate employee following Mann's orders.  Importantly, McGirt accepted responsibility, pled guilty, and acted as a government witness.  Mann also argues that the court failed to consider important factors, such as his age and disability, and placed too much emphasis on other factors, such as his prior bad acts.  But the court expressly stated that it took into account all of the § 3553(a) factors, and it reasonably emphasized Mann's pattern of willfully violating the law—as evidenced by the multiple NFA weapon transactions he entered into without obtaining an approved ATF Form 4—and the importance of regulating weapons that Congress has labeled as particularly dangerous.  We are not left with a "definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors." *Id.* (internal quotation marks omitted).  The court thus did not abuse its discretion in imposing the 97-month sentence.  Mann's sentence was substantively reasonable.

14

## IV.    CONCLUSION

For the foregoing reasons, we affirm Mann's conviction and sentence.

**AFFIRMED.**