[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-15179
Non-Argument Calendar

_____

D.C. Docket No. 1:19-cr-00015-AW-GRJ-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSEPH DONALD ROBERTS,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(July 31, 2020)

Before BRANCH, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

On July 19, 2018, special agents of the Florida Department of Law Enforcement ("FDLE") executed a search warrant on the home of William and Elizabeth Roberts and their adult sons, Joseph and Richard Roberts. They recovered a computer and a laptop from what turned out to be Joseph Roberts's bedroom, in addition to other electronic devices throughout the house. They also recovered Joseph Roberts's cellphone when he arrived on the scene. A forensic examination revealed child pornography on those three devices. The cellphone, in particular, had three videos, secretly recorded, of children in the bathroom in the Roberts's home. The children in the cellphone videos are Richard Roberts's children—Joseph Roberts's niece and nephew.

Joseph Roberts was ultimately convicted of producing, receiving, and possessing child pornography and received a 360-month sentence for those crimes. On appeal, he argues that insufficient evidence supports his convictions because the evidence against him did not foreclose the possibility that someone else produced and downloaded the child pornography on his electronic devices. He also argues that his sentence is substantively unreasonable because the district court did not afford proper weight to his stable home and work life, his dedication to helping others, and his lack of criminal history.[1] We affirm his convictions

---

[1] In his reply brief, Roberts also argues that his sentence is harsher than similarly situated offenders and is as harsh as offenders who had engaged in more egregious conduct. We do not

because the evidence presented at trial permitted the jury to conclude that Joseph Roberts was responsible for the production, receipt, and possession of the child pornography on his electronic devices.  And because it is substantively reasonable, we affirm his sentence.

I.

A. Joseph Roberts's Trial

A grand jury indicted Joseph Roberts on three counts: (1) producing child pornography, in violation of 18 U.S.C. § 2251(a) and (e) (Count 1); (2) receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1) (Count 2); and (3) possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) (Count 3).  Joseph Roberts pleaded not guilty to all counts, and the case proceeded to trial.

Because Joseph Roberts challenges the sufficiency of the evidence in support of his convictions, we must go through his trial in some detail.  In its case in chief, the prosecution presented evidence that three electronic devices belonging to Joseph Roberts contained child pornography and one of those devices had been used to produce photos and videos depicting child pornography.  FDLE Special Agent Erika Hindle-Morris testified as to the events leading up to the search of the

---

address that argument, however, because he did not raise it in his initial brief.  *See United States v. Curtis*, 380 F.3d 1308, 1310 (11th Cir. 2004).

3

Roberts's home and the materials discovered on the seized electronic devices. In May 2018, Hindle-Morris identified an IP address that advertised sharing child pornography through a file-sharing network.[2] Hindle-Morris "reach[ed] out" to the user at the IP address that had advertised sharing child pornography and the user sent her a child pornography video. She then subpoenaed the internet service provider and identified the registered users of the IP address and the associated residential address. Having obtained the names of the authorized subscribers—William, Elizabeth, and Richard Roberts—and the relevant residential address, Hindle-Morris obtained a search warrant for the Roberts's residence. She executed the warrant on July 19, 2018. As relevant here, in searching one of the bedrooms in the Roberts's home, FDLE agents found a Dell Alienware computer, a Dell laptop, and mail with Joseph Roberts's name on it. When Joseph and his brother, Richard Roberts, arrived, the FDLE agents also collected Joseph Roberts's cellphone.

---

[2] Hindle-Morris broke down the file-sharing process for the jury. As she explained, the first step in utilizing an electronic device's file-sharing capabilities is to install a file-sharing application or software, such as Shareaza, that enables the user to access the relevant network. Once connected to the network, the user can search for certain files and connect to the device of another network user that has the desired files. The users of those devices can then share files. The files are downloaded into a folder within the filing-sharing application.

The devices are able to connect to the network through the internet, which an Internet Service provider provides. The Internet Service provider assigns an IP (or "Internet Protocol") address. Hindle-Morris was able to determine that someone at the Roberts's home was sharing child pornography by identifying the IP address being used.

The FDLE agents advised Joseph Roberts of his rights and spoke with him about the electronic devices they had found. He told them that he owned the computer and the laptop and that the bedroom in which they were found was his. He told Hindle-Morris that no one besides him had access to those devices or his room. He also said that he was familiar with file sharing. But he denied viewing or possessing child pornography.

A forensic examination revealed that the laptop, the computer, and the cellphone had photos and videos depicting child pornography. The creation dates for the child pornography files on the laptop and computer spanned months. The cellphone had three videos of children, which the prosecution published to the jury. Two of the videos were made on July 1, 2018 and were of a nude nine-year-old female child using the bathroom. Another was made on July 8, 2018 and depicted a clothed 14-year-old male child walking into the bathroom. Hindle-Morris identified the children in those videos as Richard's son and daughter. She explained that the bathroom in the videos was in the Roberts's home, and, based on the orientation of the video, the person recording the video must have done so from Joseph Roberts's bedroom. The FDLE agents did not find child pornography elsewhere in the Roberts's home.

The prosecution also called the two FDLE agents who examined Joseph Roberts's digital devices. David Decker, a FDLE digital forensic examiner

5

consultant, testified about his examination of Joseph Roberts's laptop and computer. He found evidence of a filing sharing program—Shareaza—on the laptop. Decker explained that Shareaza creates directories in which it stores files that the computer is either sharing or downloading from other computers. The laptop had a Shareaza directory (labeled "incomplete" because it had not finished downloading), which included a number of child abuse video files. Although Shareaza was not currently installed on the laptop, based on the laptop's downloaded files, Decker concluded that the program had been installed in the past, and that it had been run many times. Decker found similar evidence on Joseph Roberts's computer, including Shareaza files and evidence that Shareaza had been downloaded and used extensively. Decker also found child abuse material in folders for Real Player, which is an older file sharing application. Finally, Decker found evidence that search terms related to child pornography were used on both the laptop and computer. Alexandra Wong, a FDLE crime laboratory analyst, testified that she examined Joseph Roberts's cellphone and found the three July 2018 videos of Richard Roberts's children. Based on her experience, Wong believed that the video files were made with the cell phone camera and that they had not been tampered with or otherwise altered.

Richard Roberts and his ex-wife and the mother of the children, Rebecca Oleson, also testified on behalf of the prosecution. Richard Roberts testified that

6

he lived with his parents and brother, and they all had separate bedrooms in the home.  He explained that in July 2018, his brother and father remodeled the bathroom to replace the bathtub with a shower.  Richard Roberts did not help with the repairs.  During the investigation, he was shown two pictures of his daughter using the bathroom.  Based on the vantage point, Richard testified that the pictures "would have had to come from where there was a hole in the wall where the plumbing was taken out" during the remodel.  Richard further stated that the hole was in the wall between the bathroom and Joseph Roberts's bedroom.  Oleson testified, in pertinent part, that Joseph and Richard Roberts were both educated in computer repair and had used file-sharing software to pirate movies, music, and television shows for around 19 years.

Joseph Roberts did not challenge any of the evidence offered by the prosecution.  Rather, his chief defense was that he had nothing to do with the child pornography and someone else in the household (presumably his brother Richard) must have downloaded and produced the child pornography on his devices.  Accordingly, on cross examination, defense counsel questioned Decker, who examined the computers, whether it was possible to determine which device user downloaded certain Shareaza material.  Decker acknowledged that there is no way to determine whether it was the device owner or some unauthorized user who downloaded Shareaza files and that if the device is not password protected then

7

someone other than the owner could execute the downloads. Similarly, Wong, who examined the cellphone, recognized that just because someone owns a cellphone does not necessarily mean that he took the videos taken on it. And on cross-examination, Richard Roberts testified that the bedroom doors in the home did not have deadbolts and it was not common for the family to lock interior doors.

The defense's only witness was Joseph Roberts himself. He testified that he had never downloaded child pornography but had used Shareaza to download pornography. He said that when downloading pornography, he would not know whether it was regular pornography or child pornography until it had downloaded onto his computer. His computer was not password protected, and although his laptop did have a password, he left it running and unlocked. He also testified that his cellphone did not have a password and he had a second cellphone that he left at home when he went to work.

At the close of the evidence, Joseph Roberts moved for a judgment of acquittal. As to Count 1, he argued that the government did not show that he had used a minor to engage in sexually explicit conduct to produce pornography. As to Counts 2 and 3, he argued that the government had not shown that he "knowingly" received or possessed child pornography. The district court denied the motion and the jury convicted Joseph Roberts on all three counts. He then renewed his motion for a judgment of acquittal, which the court denied.

8

B. Sentencing

Prior to sentencing, a probation officer prepared a presentence investigation report ("PSI") and determined that the advisory guideline term of imprisonment for his crimes was 840 months, which is the statutory maximum.  The probation officer reached that number by first determining that Joseph Roberts's total offense level, after applying all the relevant increases, was 43.  Because Joseph Roberts had no criminal history, his criminal history category was 1.  Based on an offense level of 43 and a criminal history category of 1, the guideline imprisonment term was life.  But the statutory maximum sentence for Count 1 was 30 years and for Counts 2 and 3 was 20 years.  Accordingly, pursuant to U.S.S.G. § 5G1.2(b), the probation officer determined that the "guideline range for his crimes [wa]s 840 months" in prison.  Joseph Roberts did not object to the PSI.

Joseph Roberts submitted a sentencing memorandum to the district court in which he argued that the guideline sentence was "grossly disproportionate" to his crime and requested a downward variance to a sentence substantially below the guideline range.  In support of that request, he pointed out that he had lived with his parents for twenty years, his family had struggled financially throughout his life, and he had worked at Walmart and grocery stores for many years.  He argued that his lack of criminal history and long-term employment history show that his crime was an isolated one.  Joseph Roberts attached letters from friends and

9

family, including his brother, Richard, to the sentencing memorandum.  In the letters, Joseph Roberts's friends and family attested to his generally good character.

Joseph Roberts reiterated his request for a downward variance to a substantially lower sentence at the sentencing hearing.  In support of that request, his counsel raised specific portions of the letters attached to his sentencing memorandum, including that Joseph Roberts was hardworking, assisted his disabled mother, and was devoted to his family.  Joseph Roberts then personally addressed the court.  He said he had done a lot of things that he was ashamed of but asked the judge to "just look at [his] heart."

In response, the government invited Oleson, the children's mother, to make a statement to the court.  She described her own pain in learning that a family member "turned against" her daughter and "use[d] her body."  She also expressed her fears that her daughter will suffer severe, long-term effects, such as developing anxiety and PTSD, as well as entering into risky behaviors, such as substance abuse and self-mutilation.  And Oleson disputed Roberts's statements that he had not committed prior crimes, asserting that "[t]his was a long progression, with multiple crimes committed along the way," and he only "got caught" because he "got sloppy."  She observed that Roberts had never been remorseful and asked the

10

court to give him the maximum possible sentence. At the conclusion of her statement, the government requested that the court impose the 840-month sentence.

The district court did not impose the 840-month sentence called for by the guidelines. It found that, although a lengthy sentence was appropriate, 840 months (70 years) was greater than necessary. It therefore varied downward from the guidelines sentence and imposed a 360-month sentence. The district court noted that it considered the 18 U.S.C. § 3553(a) factors,[3] including Joseph Roberts's age (43 years) and lack of criminal history. It also considered the fact that Roberts did not cause physical harm in producing the illicit material but noted that this consideration did not diminish the severity of the harm that Joseph Roberts caused. The district court acknowledged that the harm to the victims of child pornography was tremendous and continuous: the victims are re-victimized every time someone views the images. It emphasized the importance of deterrence in fashioning the sentence because people typically believe they can get away with child pornography offenses. And finally, it identified the protection of the public from

---

[3] Section 3553(a) mandates that the district court "impose a sentence sufficient, but not greater than necessary" to: (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (2) afford adequate deterrence to criminal conduct; (3) protect the public from further crimes of the defendant; and (4) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2)(A)–(D). In addition, the court must consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentences available; (3) the guideline sentencing range; (4) any pertinent policy statements; (5) the need to avoid unwarranted sentencing disparities; and (6) the need to provide restitution to any victims. *Id.* § 3553(a)(1), (3)−(7).

11

harm as an important factor that it had considered.  Accordingly, the district court sentenced Joseph to 360 months' imprisonment on Count 1 and 240 months' imprisonment on Counts 2 and 3, all to be served concurrently, followed by a lifetime of supervised release.  The district court also ordered restitution of $3,000 for each of the eight identified victims, including his niece and children in the other materials he possessed, for a total of $24,000.

Joseph Roberts timely appealed.  On appeal, he argues that the district court erred in denying his motion for acquittal because the evidence was insufficient to sustain the jury's verdict.  He also argues that his sentence is substantively unreasonable.

## II.

A. Joseph Roberts's Challenge of His Convictions for Insufficient Evidence

Turning to the merits, we begin with Joseph Roberts's assertion that there was insufficient evidence to support his convictions.  We review whether there is sufficient evidence in the record to support a jury's guilty verdict *de novo*, "viewing the evidence in the light most favorable to the government, and drawing all reasonable factual inferences in favor of the jury's verdict."  *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009).  "Evidence is sufficient to support a conviction if 'a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt.'"  *United States v. Maxwell*, 579 F.3d 1282, 1299

(11th Cir. 2009) (quoting *United States v. Calhoon*, 97 F.3d 518, 523 (11th Cir. 1996)).  This test is the same regardless of whether the evidence is direct or circumstantial.  *United States v. Isnadin*, 742 F.3d 1278, 1303 (11th Cir. 2014).  Either way, the government need not disprove every reasonable hypothesis of innocence; a jury may "choose among reasonable constructions of the evidence." *United States v. Peters*, 403 F.3d 1263, 1268 (11th Cir. 2005) (quoting *United States v. Montes-Cardenas*, 746 F.2d 771, 778 (11th Cir. 1984)).  But insofar as "the government relies on circumstantial evidence, reasonable inferences, and not mere speculation, must support the jury's verdict."  *Isnadin*, 742 F.3d at 1303.

Joseph Roberts contends that the evidence presented at trial was insufficient to permit the jury to make a reasonable inference that Roberts knowingly produced, received, and possessed child pornography.  A person commits the crime of production of child pornography when he "employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct."  18 U.S.C. § 2251(a).  A person commits the crime of receipt of child pornography when he "knowingly receives" such material.  *Id.* § 2252A(a)(2).  A person knowingly receives child pornography when he "intentionally views, acquires, or accepts child pornography on a computer from an outside source."  *United States v. Pruitt*, 638 F.3d 763, 766 (11th Cir. 2011).  Finally, to support a conviction under § 2252A(a)(5)(B), the

13

government must prove that a person "knowingly possesse[d]" child pornography. 18 U.S.C. § 2252A(a)(5)(B).

A jury can rely on circumstantial evidence to find that a person knowingly produced, received, and possessed child pornography so long as reasonable inferences support its verdict. *See Isnadin*, 742 F.3d at 1303; *see also United States v. Santos*, 553 U.S. 507, 521 (2008) ("[Knowledge] will be provable (as knowledge must almost always be proved) by circumstantial evidence."). In this case, ample circumstantial evidence supports the inference that Roberts produced, received, and possessed child pornography. FDLE agents found photos and videos depicting child pornography on three devices that Joseph Roberts owned and kept in his bedroom. The videos of his underage niece using the bathroom were recorded on his cell phone through a hole in his bedroom wall. The illicit photos and videos on his computer and laptop were downloaded using file-sharing software over a period of months. What is more, Joseph Roberts had specialized computer training and was familiar with file sharing. Although Roberts took the stand and denied knowingly downloading child pornography, the jury was free to reject that testimony and to consider that testimony as substantive evidence of his guilt. *See United States v. Brown*, 53 F.3d 312, 314–15 (11th Cir. 1995). Reasonable inferences from the evidence presented at trial, therefore, lead to the

14

same conclusion the jury reached: Joseph Roberts committed the crimes for which he was charged. *Isnadin*, 742 F.3d at 1303.

Joseph Roberts's defense against this conclusion is that another person in the household—his brother, Richard, who was also familiar with file sharing—was responsible for the child pornography. To sustain his conviction, the government did not need to disprove Joseph Roberts's theory that another person may have produced or download the child pornography. *Peters*, 403 F.3d at 1268. Joseph Roberts's defense hinges on the factual assertion that he did not exercise exclusive dominion or control over the computers and cellphone. And it is true that Richard Roberts testified that the bedroom doors of the Roberts's home were not dead bolted and Joseph Roberts testified that the devices were not password protected, or otherwise left unlocked. But Hindle-Morris testified that Joseph Roberts told her that no one else had access to his devices. And no evidence in the record indicates that anyone else ever used Joseph Roberts's devices. Moreover, the FDLE agents did not discover child pornography on any other device in the Roberts's home. Therefore, without any affirmative evidence, Joseph Roberts points the finger at his brother Richard. The jury was not persuaded by this tactic and, based on the evidence presented at trial, we cannot fault them for that. *See Peters*, 403 F.3d at 1268 ("[W]e are bound by the jury's . . . rejection of the inferences raised by the defendant.").

15

In conclusion, viewing this evidence and taking all reasonable inferences in favor of the verdict, the evidence was sufficient to allow a reasonable jury to find that Joseph Roberts knowingly produced, received, and possessed the child pornography beyond a reasonable doubt.  So we, like the district court, are bound by the jury's verdict.   Accordingly, the district court did not err in denying Joseph Roberts's motion for acquittal and we affirm his convictions.

B.  Joseph Roberts's Challenge to His Sentence as Substantively Unreasonable

With his convictions undisturbed, we may now turn to Joseph Roberts's challenge to his sentence of 360-months' imprisonment—well below the 840-month guideline term of imprisonment and statutory maximum.  He argues that his sentence is substantively unreasonable because, in weighing the § 3553(a) factors, the district court did not give sufficient weight to his longstanding employment, stable home life, assistance to others, and lack of criminal history.

We review the substantive reasonableness of a sentence under an abuse-of-discretion standard.  *Gall v. United States*, 552 U.S. 38, 41 (2007).  "A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors."  *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*) (quoting *United States v. Campa*, 459 F.3d 1121, 1174 (11th

16

Cir. 2006) (*en banc*)).  But "the weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court." *United States v. Croteau*, 819 F.3d 1293, 1310 (11th Cir. 2016).  We will vacate a sentence "only if we 'are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case.'" *Irey*, 612 F.3d at 1190 (quoting *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008)).  Finally, a sentence that falls significantly below the statutory maximum is an indicator of reasonableness. *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).

Joseph Roberts's 360-month sentence is not substantively unreasonable. When imposing the sentence, the district court acknowledged and applied the § 3553(a) factors: it considered Joseph Roberts's personal history, character, and lack of criminal history and balanced those factors against the harm he caused and the need to deter others from engaging in similar conduct.  Although Joseph Roberts protests that the district court did not give his mitigating factors enough weight, we do not second-guess the district court's reasonable balancing of the § 3553(a) factors.  *See Croteau*, 819 F.3d at 1310.  Moreover, Joseph Roberts's 360-month sentence falls well below the statutory maximum sentence of 840 months, which also indicates reasonableness.  *See Gonzalez*, 550 F.3d at 1324.

17

Accordingly, the district court did not abuse its discretion and we affirm Joseph Roberts's sentence.

**AFFIRMED.**